John G. SEAMAN, Appellant,

v.

Adrienne NEEL, Independent Executrix of the Estate of C. B. Neel, De-
Corpus Christi.

No. 526.

Court of Civil Appeals of Texas,
Corpus Christi.

Nov. 12, 1970.

Rehearing Denied Dec. 30, 1970.

Boone, Davis, Cox & Hale, Owen D. Cox, Corpus Christi, for appellant.

Allison, Maddin & White, David Yancey White, Corpus Christi, for appellee.

## OPINION

SHARPE, Justice.

This appeal is from a judgment rendered after jury trial in favor of appellee against appellant in the amount of $21,900.00. Appellant asserts thirty points of error. Most of them need not be discussed, however, because we have concluded that the judgment of the trial court must be reversed and the cause remanded for the joinder of a necessary and indispensable party.

Appellee, Adrienne Neel, as Independent Executrix of the estate of C. B. Neel, deceased, sued appellant, John G. Seaman, to recover a portion of legal fees for services rendered in connection with administration of the estate of Dr. J. H. Harvey, deceased. Corpus Christi Bank & Trust was the Independent Executor of said estate, but was not made a party to the suit.

Appellee's Fourth Amended Original Petition alleged in substance the following: Appellant, John G. Seaman is an attorney at law. Appellee, Adrienne Neel, is the widow of C. B. Neel, deceased, and the legal representative of his estate. C. B. Neel was for many years a practicing attorney at law in Corpus Christi, Texas, and for some years prior to his death maintained an office in that city with appellant John G. Seaman for the practice of law. On September 11, 1963, C. B. Neel and John G. Seaman entered into a written agreement, in the form of a letter from Neel to Seaman, concerning their respective interests and the operation of their law office. The provision most directly involved reads as follows:

"It is distinctly understood that the fees accruing during the calendar month in which I die, or retire, shall be divided upon the basis above indicated, and fees for all work done after the said calendar month shall belong to you. If any work has been done upon any matters in the office prior to my death or retirement, then you and my representatives, in the event of my death, or myself upon retirement, shall agree upon the division of these fees upon an equitable basis taking into consideration the amount of work theretofore done, and as to the amount of work thereafter to be done."

Appellee further alleged in substance the following: A partnership existed between Neel and Seaman under which they shared all expenses related to operation of the law practice and Neel received 60% and Seaman 40% after the deduction of the operating expenses from gross fees that were received. C. B. Neel died on January 29, 1965, leaving his estate to appellee. All matters concerning the law practice were resolved except as to the estate of Dr. J. H. Harvey. Neel and Seaman had prepared a will for Dr. Harvey who died on January 8, 1965. The will named Corpus Christi Bank & Trust as independent executor for the estate of J. H. Harvey, deceased. Appellee further alleged that appellant had billed and received $30,000.00 from Corpus Christi Bank & Trust, the independent executor of the Harvey Estate, as partial fee prior to the filing of this suit; that appellant had breached the contract between him and C. B. Neel because he had failed to divide the fee in the Harvey estate on an equitable basis; that certain provisions of the Texas Uniform Partnership Act had been violated; that, alternatively, a joint venture existed between Neel and Seaman and appellee was entitled to share in the fee from the Harvey estate on such basis; that, alternatively, if the contract between Neel and Seaman was not breached by the latter, that appellee should

be entitled to recover C. B. Neel's fair share of the attorneys' fees from the Harvey estate based on an equitable division of the fee taking into consideration the amount of work theretofore done and the amount of work thereafter to be done, which share would be a sum of at least $60,000.00.

After the evidence had closed, appellee, over objection of appellant, was granted leave to file a trial amendment which, omitting formal portions, reads as follows:

"Plaintiff says that subsequent to the death of Dr. J. H. Harvey on January 8, 1965, the Plaintiff's deceased husband, C. B. Neel, performed certain services for the J. H. Harvey estate which were as follows: he conducted the initial interview concerning the application for probating the estate of J. H. Harvey; he prepared an application for the probating of the will of Dr. J. H. Harvey; he had such application set down for hearing; he attended and conducted on behalf of the estate of J. H. Harvey the hearing on the above application; he prepared the order admitting the will to probate; he secured the necessary judicial approval of such order; he prepared and filed the oath of the independent executor nominated in such will; further, he wrote such letters and performed other services connected with the initiation of probate proceedings in connection with the J. H. Harvey estate.

Apart and aside from any agreement which may have existed between C. B. Neel and the Defendant John G. Seaman, Plaintiff says that C. B. Neel from the period of Dr. Harvey's death on January 8, 1965 until the time of C. B. Neel's death on January 29, 1965, that C. B. Neel rendered legal services to the J. H. Harvey estate and that a reasonable fee in and around Nueces County, Texas, for such services is the amount of THIRTY EIGHT THOUSAND AND NO/100 ($38,000.00) DOLLARS and Plaintiff does hereby pray judgment of the Court in this amount, in addition to the other damages alleged and pled in the Plaintiff's Fourth Amended Original Petition."

The trial court submitted two special issues to the jury which were answered as follows:

## "SPECIAL ISSUE NO. 1

What do you find from a preponderance of the evidence to be the reasonable value of the legal services rendered on behalf of the J. H. Harvey Estate for the period from January 8, 1965 to January 29, 1965?

Answer in Dollars and Cents.

Answer 36500.00

## SPECIAL ISSUE NO. 2

What do you find from a preponderance of the evidence to be an equitable division of fees for work done on the J. H. Harvey Estate prior to January 29, 1965, taking into consideration the amount of work theretofore done and as to the amount of work thereafter to be done?

Answer by stating a percentage.

Answer: Plaintiff 60 per cent.

Answer: Defendant 40 per cent."

The trial court rendered judgment based on the verdict that appellee recovered from appellant the amount of $21,900.00, which sum represents 60% of $36,500.00.

Appellant's points twelve, thirteen, fourteen and fifteen read as follows:

## "POINT OF ERROR NO. TWELVE

In permitting the determination of the reasonable value of legal services rendered, when a necessary and indispensable party, Corpus Christi Bank and Trust, Independent Executor of the Estate of Dr. J. H. Harvey, Deceased, was not a party to the proceedings.

## POINT OF ERROR NO. THIRTEEN

In allowing evidence as to a reasonable attorney's fee for services rendered for the benefit of said Bank, as such Executor, in connection with the affairs of the Dr. J. H. Harvey Estate, since said Bank is not a party to this suit.

## POINT OF ERROR NO. FOURTEEN

Submitting Special Jury Issue No. 1, based upon a quantum meruit count, when the necessary and indispensable defendant, Corpus Christi Bank and Trust, Independent Executor of the Estate of Dr. J. H. Harvey, Deceased, was not a party.

## POINT OF ERROR NO. FIFTEEN

Rendering judgment against this defendant for a specific amount of a fictitious reasonable attorney's fee, when said Bank, as such Executor, was not a party to the proceedings."

The material facts relating to the above-stated points may be summarized as follows: Appellant, John G. Seaman, and C. B. Neel, began practicing law together in 1951. From 1951 until 1963 appellant was an associate or employee of C. B. Neel and worked with him on a salary arrangement. At the time appellant joined C. B. Neel, Mr. Neel had a very active oil and gas practice. Also, at this time, C. B. Neel had a long-time friend and client named Dr. J. H. Harvey. On September 11, 1963, appellant Seaman and C. B. Neel executed a letter agreement by which the nature of the association was changed from one in which appellant was paid a salary, to one under which, in substance, he was to receive 40 per cent of the net profits from the operation of their legal association. Appellant and C. B. Neel operated under this agreement from September 11, 1963, until the time of C. B. Neel's death. On January 8, 1965, Dr. J. H. Harvey died leaving a will dated the 17th day of December 1963, in which the Corpus Christi Bank & Trust Company was named the independent executor. This will also provided that "The executor and trustee shall employ Neel and Seaman (C. B. Neel and/or John G. Seaman) as attorneys, or attorney, for the estate of J. H. Harvey, deceased, and the trust created herein." Upon Dr. Harvey's death, Neel and Seaman commenced to represent the Corpus Christi Bank & Trust Company, as the independent executor of the J. H. Harvey Estate. The value of that estate was approximately 2½ million dollars. On the 29th of January, 1965, C. B. Neel died. All matters relative to the financial arrangements between C. B. Neel and the appellant were concluded with the one exception which constitutes the subject matter of the present lawsuit, to-wit, the extent to which the appellee was to participate in the fee from the J. H. Harvey Estate. Representation of the Executor Bank was continued by appellant following C. B. Neel's death until approximately June of 1965 when appellant formed a partnership for the practice of law with the members of the firm of Keys, Russell, Keys & Watson, which thereafter practiced under the name of Keys, Russell, Watson & Seaman. Subsequent to the formation of that partnership, various members of it performed legal services in connection with the estate of J. H. Harvey. In January and July, 1966, the firm of Keys, Russell, Watson & Seaman billed the Corpus Christi Bank & Trust for $15,000.00 or a total of $30,000.00. Each of these billings, which were paid by the bank, was on an interim basis and did not designate for what legal services such bills were being rendered. On January 4, 1966, the appellant Seaman wrote the appellee, Mrs. Neel, a letter on the stationery of Keys, Russell, Watson & Seaman and enclosed therewith a check in the amount of $5,000.00, which purported to represent Mrs. Neel's share in the fee from the J. H. Harvey Estate. Mrs. Neel, by letter dated January 17, 1966, returned the check stating in substance that she felt it was premature and that after the Harvey Estate was finally settled she would be happy to discuss settlement of the matter with appellant and Mr. Keys. No

agreement was ever made between Neel and Seaman or John G. Seaman or Keys, Russell, Watson & Seaman and the Corpus Christi Bank & Trust Company as to the total fee to be charged for the legal services connected with the administration of the Harvey Estate. The interim billings of $15,000.00 each were made without any negotiations with the Corpus Christi Bank & Trust Company and in these billings there was no indication of what amount remained to be paid nor any indication as to what services the billings applied to. Since July of 1966 no further bill has been submitted to the Corpus Christi Bank & Trust Company for the legal work which has been done on the Harvey Estate by appellant or the law firm of which he is a member. Appellant testified that he or members of the law firm with which he is now associated had spent over 500 hours in handling legal matters in connection with the administration of the estate. The J. H. Harvey Estate is still in administration. All matters other than routine are referred to the trust committee of the executor bank, which makes the final decision and Mr. Morrison, the bank trust officer, testified he would not recommend to the trust committee a fee without substantial study. The firm of Keys, Russell, Watson & Seaman continued to represent said bank, as independent executor of said Dr. J. H. Harvey Estate, and was still doing so at the time of trial of this cause.

We have concluded that appellant's basic contention under his points Twelve through Fifteen that Corpus Christi Bank & Trust, Independent Executor of the Estate of Dr. J. H. Harvey, Deceased, was a necessary and indispensable party to this suit must be sustained. Rule 39, Texas Rules of Civil Procedure; Petroleum Anchor Equipment, Inc. v. Tyra, 406 S.W.2d 891 (Tex.1966); Kelsey v. Hill, 433 S.W.2d 241 (Tex.Civ.App., Texarkana, 1968, n. w. h.).

In Petroleum Anchor Equipment, Inc. v. Tyra, supra, our Supreme Court held that under Rule 39, T.R.C.P., "persons having a joint interest" are indispensable parties. In Kelsey v. Hill, supra, the Court held that there was a nonjoinder of an indispensable party and in part said:

"The case previously cited, Petroleum Anchor Equipment, Inc., v. Tyra, 406 S. W.2d 891 (Tex.1966) considers the effect on current practice of Texas Rules of Civil Procedure, rule 39 governing joinder of necessary parties. Referring to the rule the opinion says: 'It is * * * at once apparent that "persons having a joint interest" within the meaning of paragraph (a), properly interpreted, are *indispensable* parties, * * *.' The section referred to in the rule states that: 'Persons having a joint interest shall be made parties and be joined as plaintiffs or defendants.' The term 'joint interest' means joined together in interest, a united interest or an interest shared in common. A comprehensive definition applicable in all cases detailing the meaning and procedural consequence of the term 'joint interest', as the term is used in the rule, would be extremely difficult to fashion. For the purposes at hand a useable test for isolating indispensable parties may be suggested, however. It is this: When a person's interest in the subject matter of a suit is directly involved and must be considered and decided in the process of adjudicating the issues between the parties actually named in the suit, the person has a joint interest in the subject matter of the suit and is an indispensable party to the action."

In this case it is established that the parties at all material times have looked to the Executor Bank for payment of all fees properly owing for legal services rendered in connection with the Harvey Estate. The Executor Bank undoubtedly is or will be obligated to pay a fee or fees for the legal services rendered at its request for its benefit as independent executor of the Harvey Estate. This obligation to pay legal fees properly owing would apply to services rendered in the Harvey Estate by Neel & Seaman for the three weeks period prior

to Mr. Neel's death, and for services thereafter rendered by Mr. Seaman until the formation of the law firm of Keys, Russell, Watson & Seaman, and for services rendered by that firm for services rendered after its formation. However, in this case, we are directly concerned only with the fee and the amount thereof which appellee, as independent executrix of the Estate of C. B. Neel, deceased, is entitled to recover against appellant John G. Seaman.

As submitted to the jury herein the only questions decided were: (1) That the reasonable value of the legal services rendered on behalf of the J. H. Harvey Estate for the period from January 8, 1965 to January 29, 1965 was $36500.00, and (2) that an equitable division of fees for work done on said estate prior to January 29, 1965, taking into consideration the amount of work theretofore done and thereafter to be done was 60% for plaintiff-appellee and 40% for defendant-appellant.

The parties agree that the judgment in favor of appellee against appellant for $21,-800.00 (60% of $36500) representing the fee earned by C. B. Neel for the period January 8–29, 1965, does not fix the liability of the bank in such respect. It is apparent that the amount of the fee which appellee would be entitled to recover could be fixed only in one of two ways: (1) by agreement between appellant, appellee and the Executor Bank, or (2) by court judgment in a suit wherein all of them were parties. Although the evidence shows that the Executor Bank has paid $30,000.00 to the firm of Keys, Russell, Watson & Seaman on interim statements, it does not establish what amount is to be allocated for the period January 8–29, 1965, nor the amount to be paid for services rendered thereafter. In short, it appears that the amount for which the Executor Bank may be liable for payment of legal fees has not been established by either of the above-mentioned methods for any particular period of time.

In this situation appellant is placed in a position of great uncertainty. The Execu-

tor Bank has a duty to the Harvey Estate to pay only reasonable attorneys' fees for services rendered to it. If the bank is unwilling to agree to pay a fee of $36,500.00 for legal services rendered from January 8th to 29th, 1965, it is entitled to litigate the question and to have the fee fixed by judgment of a court. If a lesser amount is awarded by the judgment in such event, it is apparent that appellant, if he is bound to pay the judgment in this case, would be prejudiced by such result. It is further apparent that the present judgment leaves appellant subject to a substantial risk of incurring multiple or inconsistent obligations in connection with the payment of attorneys' fees by the Executor Bank and the portion thereof which appellee, as Executrix of the Estate of C. B. Neel, may be entitled to recover.

We believe, therefore, that it is established that the amount of the fee for which the Executor Bank is liable for services rendered in connection with the Harvey Estate is directly involved herein and must be considered in the process of adjudicating the issues between the parties to this suit. We, therefore, hold that Corpus Christi Bank & Trust, Independent Executor of the Estate of Dr. J. H. Harvey, Deceased, was a necessary and indispensable party to the suit. In order to enable the court to grant complete relief between the parties before it, the Executor-Bank should be made a party to the suit. See Petroleum Anchor Equipment, Inc. v. Tyra, supra; Kelsey v. Hill, supra; Royal Petroleum Corporation v. Dennis, 160 Tex. 392, 332 S. W.2d 313 (1960); Fischer v. Rio Tire Co., 65 S.W.2d 751 (Com.App., 1933, holdings approved); Crabtree v. Burkett, 433 S.W.2d 9 (Tex.Civ.App., Beaumont, 1968, n. w. h., on subsequent appeal 450 S.W.2d 728, 1970, n. w. h.).

Our conclusion that the Corpus Christi Bank & Trust, Independent Executor of the Estate of Dr. J. H. Harvey, Deceased, is a necessary and indispensable party requires that the case be reversed and remanded to the trial court and other points asserted by

appellant need not be discussed. However, if the Executor Bank is made a party to the suit and another trial is to be conducted, we deem it appropriate to refer briefly to appellant's point No. Twenty-Four which reads as follows:

## "POINT OF ERROR NO. TWENTY–FOUR

Refusal of the Court to require plaintiff to make the law firm of Keys, Russell, Watson & Seaman a party to this suit, since that firm, rather than John G. Seaman, individually, performed legal services for Corpus Christi Bank and Trust as Independent Executor of the Estate of Dr. J. H. Harvey, Deceased."

The record reflects that appellant filed two separate pleas in abatement asserting that the law firm of Keys, Russell, Watson & Seaman was a necessary party to this suit and that the cause be abated until such time as said firm is made or becomes a party to it. The pleas in abatement asserted in substance that after the death of C. B. Neel, the Executor Bank employed John G. Seaman to act as attorney for it in connection with the Harvey Estate until June 1, 1966; that thereafter the law firm of Keys, Russell, Watson & Seaman, a partnership, represented the Executor Bank and said Estate, including present representation; that appellee is claiming a share of the fees being earned by said law firm; that no fee arrangement or total fee has been agreed upon by any of the attorneys involved and the Executor Bank; that no accounting can be had regarding future fees, if appellee is legally entitled to such accounting, until the Harvey Estate is closed; and that the law firm of Keys, Russell, Watson & Seaman is a necessary party to this suit. Appellant's pleas did not specifically assert that the Keys' law firm was an indispensable party to the suit. The record does not show that any hearing was held on appellant's pleas in abatement or that the trial court acted on them. On the present record we are not called upon to decide whether the firm of Keys, Russell, Watson &

Seaman was an indispensable party or whether said firm was a "necessary but not indispensable" party, often called an "insistible" party. See Petroleum Anchor Equipment, Inc. v. Tyra, 406 S.W.2d 891 (Tex.1966).

However the contentions made by appellant present serious questions and we call attention to the fact that Rule 39, T.R.C.P., has been amended effective January 1, 1971, pursuant to order of the Supreme Court dated July 21, 1970. The rule has been completely rewritten to adopt, with minor changes, the provisions of Federal Rule of Procedure 19 as amended. Section (a) of Rule 39, as amended, will read as follows:

"Rule 39. Joinder of Persons Needed for Just Adjudication

(a) Persons to be Joined if Feasible. A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. * * *"

It appears probable that any new trial herein will take place after January 1, 1971 and that questions concerning joinder of parties will be governed by Rule 39, T.R.C.P. as amended. Determination of such questions will then be for the trial court in the first instance and we do not express an opinion concerning appellant's pleas in

abatement if they are properly urged on further proceedings in the trial court.

The judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion.

NYE, Justice (dissenting).

I respectfully dissent. The basis given by the majority of this Court for reversal and remand of this case is the fundamental error of the non-joinder of a necessary and indispensable party. It is a correct statement of the law, that jurisdiction over indispensable parties to a suit is as essential to the court's right and power to proceed to judgment, as is its jurisdiction of the subject matter. Scott v. Graham, 156 Tex. 97, 292 S.W.2d 324 (1956). This particular type of a point of error, being fundamental, may be raised for the first time in the appellate court. The majority of this Court holds that the Bank is an indispensable party who has a joint interest in the subject matter of the suit within the meaning of Rule 39, T.R.C.P. The determination of whether this case must be reversed and remanded, because of the non-joinder of the Bank as a party defendant, rests to a large degree upon three things: (1) The facts; (2) the ultimate relief sought by Mrs. Neel, the plaintiff; and (3) the procedure by which the non-joinder of other than an indispensible party, was brought to the attention of the Court.

I disagree with the majority opinion because: (1) the facts show that the Bank did not have a joint interest with the defendant as is contemplated by the rule, (2) the ultimate relief sought by the plaintiff did not make the Bank an indispensable party; and (3) even if the Bank was considered a conditionally necessary party, the defendant failed to take the proper procedural steps so as to cause reversible error.

Reviewing the evidence most favorable to the jury verdict as we are required to do, there is ample evidence to support the special issues answered by the jury. These issues were ultimate issues and they by themselves excuse the Bank as a jurisdictional prerequisite to a proper judgment. The facts that give rise to this unfortunate suit are virtually undisputed.

Judge C. B. Neel was a distinguished lawyer and practitioner in Corpus Christi. He died in January 1965. For some twenty-five years prior to his death, Dr. J. H. Harvey had been a friend and client of Judge Neel. In 1951 Judge Neel employed John G. Seaman, the defendant, to work in his law office. Less than a year and a half prior to Judge Neel's death, he and Seaman entered into an agreement whereby their respective interests and ownership in the future operation of their law office were set out and agreed upon. In a three-page, single-spaced letter agreement, Judge Neel proposed to Seaman certain terms for the settlement and termination of their association as lawyers in the event of death, illness, disability or retirement of either of them. It was evident from such agreement, that the firm and law practice belonged to Judge Neel up until this particular time. The letter, for instance, acknowledges that the library belonged to Judge Neel and the administration of the office and bank account was carried in Judge Neel's name. The agreement authorized Seaman to carry on the firm in the firm name in the event of Judge Neel's disability or upon his death, if Seaman was still practicing with Judge Neel at such time. The agreement gave Seaman the option to purchase the law library, title opinions, and files. It provided specifically for the settlement of contingent fees, property taken in as fees, and gave to Seaman all the fees for work performed by him, one month after Judge Neel's death. It then stated however that

"* * * *If any work has been done upon any matters in the office prior to my death or retirement, then you and my representatives, in the event of my death, or myself upon retirement, shall*

*agree upon the division of these fees* (that had accrued up until the time of his death) *upon an equitable basis taking into consideration the amount of work theretofore done, and as to the amount of work thereafter to be done."* (Emphasis and Parenthesis supplied)

Seaman accepted Judge Neel's proposal.

On December 17, 1963, a will for Dr. J. H. Harvey was drawn by the firm of Neel & Seaman in which the Corpus Christi Bank & Trust Company was named Independent Executor of the estate and Trustee of a perpetual type trust set up principally for various charitable organizations. In the next to the last article of the will, it stated that:

"The executor and trustee shall employ Neel and Seaman (C. B. Neel and/or John G. Seaman) as attorneys, or attorney, for the estate of J. H. Harvey, deceased, and the trust created herein; but upon the refusal or inability of the survivor of them to act, then the executor and/or trustee shall employ counsel of their own choosing and pay to the attorneys acting for such executor and trustee reasonable fees for their services."

On January 8, 1965, Dr. Harvey died leaving an estate consisting primarily of land and oil, gas and mineral interests valued in excess of 2½ million dollars. Immediately upon Dr. Harvey's death, the Corpus Christi Bank & Trust Company employed Neel and Seaman as their attorneys. Judge C. B. Neel commenced at once the business of representing the independent executor in the probate of this estate. Judge Neel conducted the initial interview with the executor relative to Dr. Harvey's estate; prepared the application for the probating of the will; set the hearing for such application; and attended and conducted the hearing in the probate court on behalf of the estate which culminated in admitting the will to probate. He prepared the order probating the will. He secured the necessary judicial approval

of the order, and prepared and filed the oath of the independent excutor.

On January 29, 1965, Judge Neel died. Seaman succeeded to the law practice of Neel and Seaman conducting the same under the firm name. He continued to represent the executor of Dr. Harvey's estate. All matters relative to the financial arrangement of the law firm were settled and concluded wih Seaman buying the library and settling all accounts with Judge Neel's widow, except the Harvey Estate. Seaman continued his law practice by himself for several months and then joined the firm of Keys, Russell, Keys & Watson. He became a partner in their firm.

In January 1966 Seaman billed the Executor for $15,000.00 for professional services rendered. This was promptly paid by the Bank. On January 4, Seaman wrote to Mrs. Neel stating that he had collected the sum of $15,000.00 from the bank as executor of Dr. Harvey's estate for services in connection with the estate. He stated that:

*"In accordance with the letter agreement between Judge and myself, and taking into consideration the services rendered to the Estate prior to the Judge's death, and after careful consideration and much study, it appears to me that your fair share of the total fee to be charged in the Harvey Estate would be the sum of $5,000.00, and I hand you herewith check of this firm in the said amount as payment in full in connection with said estate."*

A few days later, Mrs. Neel returned the check to Seaman stating that she was returning the check because:

" * * * I feel the present time and this check in the amount of $5,000.00, is premature.

After the Harvey Estate is finally and completely settled, I will be happy to fully discuss the Neel and Seaman part-

nership settlement of this matter with you and Mr. Keys."

In July 1966, Seaman billed the executor for another $15,000.00 for professional services rendered. This was also promptly paid without question. Seaman made no further written offer then, or any time thereafter, to settle the fee with Mrs. Neel except upon the initial unilateral proposal made in January 1966. Whereupon Mrs. Neel, as independent executrix of the estate of C. B. Neel, brought suit against Seaman to determine and adjust the contractural rights which grew out of the letter agreement between Judge Neel and Seaman while they were practicing together.

During the trial, the Honorable Robert W. Blount, an attorney and head of the Trust Department of the Corpus Christi Bank & Trust, testified relative to the Harvey Estate. He stated that he was Vice President of the Bank as well as the trust officer. He said he had the primary responsibility for the handling of the Harvey Estate. He testified that the Bank as executor, had employed Neel and Seaman as their attorneys to probate the Harvey Estate. He testified in effect that the Bank had always employed the lawyer or lawyers named in a will as a matter of policy; that this was also the same policy of the two other institutions where he had worked. He testified that although Seaman had joined a new firm, the Bank would continue to employ Mr. Seaman as their attorney for the estate and the subsequent trust as directed by the will. On direct examination he said that, the only way the Bank would discharge the attorney so employed, would be if the attorney totally failed to carry out the wishes of the deceased.

Turning now to the evidence concerning the fee arrangement: The will called for the payment of a reasonable fee. Both trust officers of the Bank stated that the executor would be willing to pay a reasonable attorney fee in connection with the

probate of the estate. Blount stated that he had always adhered to the policy of approving the fee of an attorney, if the attorney submitted his fee based upon the recommended minimums set by the State Bar; that they would honor such fee as he had always felt that an attorney could enforce such a fee in a court of law, anyway, if it was based upon the minimum fee set forth by the State Bar of Texas. He testified further that most attorneys that he had dealt with throughout the years, based their fee upon the recommended minimum set by the State Bar. Evidence later received was, that the State Bar minimum fee was 3% of the gross estate.

Mr. Morrison, the Bank's trust officer at the time of the trial and who had been with the Bank about ninety days, acknowledged that the Bank would have the duty to pay a reasonable fee in connection with the Harvey Estate. He stated that he had practiced law in San Antonio before coming to Corpus Christi; that basically the recommended fee in San Antonio, was 3% of the gross estate as is contained on the estate tax return. Although he did state that the Harvey fee would require some substantial study, he admitted that the 3% fee "would be in the ball park". The minimum fee schedule adopted by the State Bar, calls for additional fees for additional services. This may account for Morrison's statement requiring substantial study.

Mrs. Neel called the Honorable Richard B. Stone, a practicing attorney in Corpus Chrisi as an expert witness. He was presently serving as President of the Nueces County Bar Association. He testified that 3% of the gross estate would be a fair minimum fee for handling an estate of between 2½ and 3 million dollars. That so far as lawyers in Nueces County were concerned, they had, by and large, been following the 3% figure. He also testified that in his opinion and from his experience that one of the factors in the division of fees between attorneys, is the considera-

tion of who actually produced the work or the client. After a lengthy direct and cross examination, witness Stone testified that he had an opinion as to a reasonable fee for the work done by Neel and Seaman up to the time of Judge Neel's death. The following hypothetical question was put to him:

"Q I would like for you to assume the following facts as being true, that there was two lawyers associated in the practice of law in Corpus Christi, Nueces County; that a client came and asked that a will be prepared; that this will provided that the Corpus Christi Bank & Trust would be the independent executor of that estate; that the will also provided that this law firm shall be appointed as attorneys for the estate and as attorneys for a trust which was created by the instrument which provided that the bulk of the estate would go to charitable institutions, the income from the estate would go to charitable institutions, and that the remainder of—that the money would remain in trust and only the income would go these beneficiaries; that it was to be perpetuity, the trust. I would like for you to further assume that the testator of this will died and that the estate had a gross value for the purpose of taxation of not less than $2,539,000; that one of the attorneys gathered the initial information concerning getting the material ready for probating the will; that a responsible officer, a trust officer of this bank and trust has testified under oath that he would pay or be agreeable to paying a three per cent of the gross taxable fee as an attorneys' fee; that after the death of the testator, one of the lawyers did the following things: That he conducted the initial interview and gather the material relevant to filing of the application; that he prepared the application for the probating of the will. He had the application set down for a hearing. He attended and conducted, on behalf of the estate, a hearing on the above application; that he prepared the order probating the will. He secured the necessary judicial approval of such order and that he prepared and filed the oath of the executor; that thereafter, he died. Now, taking into account those factors, what, in your opinion do you believe would be a fair—" (objection)

"* * * fee for the work done up until that time, the time of the death of the lawyer that I have referred to?

A In my opinion, the reasonable value for those services down—up to that time would be $38,000."

There was no agreement made between the firm of Neel & Seaman or by Seaman individually with the bank as to the total fee to be charged for the services in connection with the administration of the estate. There were no negotiations or specific billings made to indicate what amount remained to be paid by the bank. There was nothing to indicate in either the billing or from the check received from the Bank as to what the $30,000.00 was to be applied to. Following the second billing and after this suit was filed, no other statement was rendered by Seaman to the Bank. This was from July 1966 up to and including the date of trial, although some 500 hours of work had been performed for the Bank. Seaman steadfastly refused to testify as to what a reasonable fee would be in connection with the probate of the Harvey estate. Although he never did state that 3% of the gross estate was not a fair fee, his only commitment was, that he would render a statement for a reasonable fee at the conclusion of the work in connection with the estate.

The testimony was virtually undisputed that $76,000.00 was a reasonable minimum fee for the probate of an estate of the size of the Harvey estate. As to the value of the services that were rendered by Neel and Seaman to the J. H. Harvey estate between the time of Harvey's death and the death of Judge Neel, testimony was

received valuing these services from $400.00 upwards to $38,000.00. The jury found from the evidence, that the reasonable value of such services for this period of time, was $36,500.00. The jury further found that an equitable division of this amount, taking into consideration the amount of work theretofore done as to the amount thereafter to be done, would be 60% for Mrs. Neel (i. e., $21,900.00).

At no time prior to the trial of this law suit did Seaman believe that the Bank was necessary to a proper determination of a division of the fees earned. His unilateral decision to divide the fee with Mrs. Neel did not include the Bank as a party consultant. He stated to Mrs. Neel, that *from the letter agreement,* and taking into consideration the services rendered to the estate prior to the judge's death, that *it appeared to him* that Mrs. Neel's fair share of the total fee to be charged in the Harvey estate would be the sum of $5,000.00 as payment in full of her share of this fee. If Seaman believed that it was not necessary then to consult the Bank to determine the amount of a proper fee and how it would be divided, it certainly would follow that Seaman would have no basis for an argument now that the Bank is indispensable to a proper settlement of the dispute between these parties over this fee.

Seaman alleged, among other things, in his answer to Mrs. Neel's suit, that " * * since only $30,000.00 has been *billed and collected by John G. Seaman,* plaintiff is, if she is entitled to recover anything, entitled only to the proper proportion of the $30,000.00, to-wit, 60% of a reasonable fee for the work done prior to the death of C. B. Neel;" (emphasis supplied). This was the issue. Since Seaman admitted billing and collecting the $30,000.00, and since Mrs. Neel seeks only the amount due her from Seaman, then only Seaman was indispensable. The Bank and Seaman's new law firm were only proper parties to this cause of action. The Bank had no joint interest in the division of this fee.

It was not a party to the contract between the parties. Any judgment determining the division of the fees between the parties would not be res judicata as to any subsequent cause of action brought by Seaman against the Bank for a final determination of the total fee. Since Seaman admits billing and receiving the money, Seaman's new firm is not an indispensable party either.

Based upon the written agreement between Judge Neel and Seaman, Seaman was required to share this fee with Mrs. Neel in her representative capacity, on an equitable basis, considering the amount of work performed and the work thereafter to be done. This he refused to do, which gave rise to Mrs. Neel's cause of action. Seaman was in control of and will eventually dictate the amount he will finally charge the independent executor. The jury verdict only set that amount that should be charged for the interim term in which Mrs. Neel was interested.

It was undisputed that the ultimate fee would be more than the $30,000.00 billed. Had the Bank denied liability, or had it refused to pay the billings, or had either party been apprehensive as to whether the Bank would or could make payment, or if the pleadings reflected such, then the Bank may have been more than a proper party to this suit. But these aspects of this case are not before us, either by pleadings or briefs. Mrs. Neel elected to sue Seaman individually. Any cause of action she might have against the Bank may now be barred by the statute of limitations. Mrs. Neel's action against Seaman to determine the amount due and owing to her was in the nature of a declaratory judgment against him. Although it may have been proper to have modified the trial court's judgment so as to give Mrs. Neel, judgment in the amount of 60% of $36,500.00 as the same has or will be collected by Seaman, neither party sought such relief. It was and is Seaman's responsibility to see to it that the $21,900.00 due Mrs. Neel in her representative capacity is paid to her out

of the monies already received. The trial court's judgment reflects this responsibility. Seaman stated that insofar as Mrs. Neel was concerned, he was in a position of trust and that good faith was required of him in his position. I have no doubt, that after this sincere dispute is finally determined, Seaman will effectuate this charge.

The Bank had no interest as a divisor of the fee between the parties. It was and is obligated to pay a reasonable fee. It has agreed to do so. Seaman stated that he would charge a reasonable fee. I believe that he will do this. Since it is undisputed that the Bank will pay a reasonable fee and Seaman can be expected to charge a reasonable fee, and since the jury found from the evidence that the amount owed by Seaman to Mrs. Neel was a portion of such a reasonable fee, I see no basis for reversal.

There is one other aspect to be considered. Seaman did not make any specific objection to the non-joinder of the Bank as a party to this suit. He filed no plea in abatement nor did he verify by affidavit, his objection that there was a defect in the parties defendant as to the bank. He only inferentially objected on three occasions as one of a series of reasons for other relief requested. It was then that he mentioned that the Bank was not a party to this suit. For instance, in his motion in limine number two, he moved and requested that " * * * the Court instruct counsel for plaintiff and any witness who may be called to testify in this cause, not to make any reference directly or indirectly asking any statement or by any other means as to any of the below set out matters:

(a) What sum or sums might or might not constitute a reasonable total attorney's fee for the handling of the Dr. Harvey Estate; and/or

(b) What sum or sums might or might not constitute reasonable future charges to be made for legal work for the Dr. Harvey Estate; and/or

(c) What sum or sums might or might not be reasonable attorney's fees for legal work already performed for the Dr. Harvey Estate."

Then, listing four reasons to uphold this motion, he stated: " * * *

3. The executor of Dr. Harvey's Estate, Corpus Christi Bank and Trust, is not a party to this suit and this Court in this case cannot control the fee agreement which must some day be decided upon between defendant and said Bank."

The other two times occurred during the course of the trial. Once, as one of the reasons for his objection to a trial amendment, and the third time was in support of his motion for an instructed verdict. However, Seaman never did object specifically nor directly of the non-joinder of the Bank. He did not file a verified pleading as required by Rule 93, T.R.C.P., nor did he specifically file a plea in abatement. As to the non-joinder of a proper party, a defendant may not complain on appeal of the non-joinder, when he could have impleaded the party himself. Jasper & E. Ry. Co. v. Peek, 102 S.W. 776 (Tex.Civ. App.—1907, err. ref.). Even if the Bank was an "insistible" or conditionally necessary party, Seaman's objections were not properly presented, since he failed to file a plea in abatement. His objection now, in a point of error on appeal, comes too late. Puryear v. Red River Authority of Texas, 383 S.W.2d 818 (Tex.Civ.App.—Amarillo 1964, wr. ref. n. r. e.); Petroleum Anchor Equipment, Inc. v. Tyra, 406 S.W.2d 891, 895 (Tex.1966); Rule 93, T.R.C.P. and Rule 39, T.R.C.P. See also McDonald Texas Civil Practice, Sec. 3.24, Parties, and 44 Tex.Jur.2d Parties, Sec. 77, Sec. 82 and Sec. 86.

Seaman was cognizant of the letter agreement and his fiduciary responsibility to Mrs. Neel. This included his obligation to render a statement to the original joint client (Bank) for a reasonable fee for the services performed by the firm of Neel & Seaman up to the time specified in

**672**

the agreement. Since he failed to do what he was obligated to do, the court, consistent with equity and good conscience, determined such fee. I fail to see fundamentally reversible error. I would accordingly affirm the judgment of the trial court.