**John G. SEAMAN, Appellant,**

v.

**Adrienne NEEL, Independent Executrix of the Estate of C. B. Neel, Deceased, Appellee.**

**No. 526.**

Court of Civil Appeals of Texas, Corpus Christi.

April 27, 1972.

Rehearing Denied May 25, 1972.

Davis & Hale, Allen V. Davis, Corpus Christi, for appellant.

Allison, Maddin, White & Brin, David Yancey White, Corpus Christi, for appellee.

## OPINION

NYE, Chief Justice.

This is a suit by Adrienne Neel in her capacity as independent executrix of the estate of her deceased husband C. B. Neel to recover a portion of attorney fees due from the surviving member of the law firm in which her husband was senior member. The case was tried before a jury. Based on special issues answered, the trial court entered judgment for Mrs. Neel in the amount of $21,900.00. This was the amount the jury found to be her share of the reasonable value of the legal services rendered by the law firm up to the time of her husband's death. The succeeding member of the law firm appeals, complaining principally that the judgment in favor of the widow is excessive. We affirm.

Appellant Seaman's first point of error is:

"Judgment should not have been rendered on the verdict because $36,500.00 as the fee for the amount and kind of the work done in the short period involved is excessive to the point being unconscionable."

Rule 440, Texas Rules of Civil Procedure, provides:

"In civil cases appealed to a Court of Civil Appeals, if such court is of the opinion that the verdict and judgment of the trial court is excessive and that said cause should be reversed for that reason only, then said appellate court shall indicate to such party, or his attorney, within what time he may file a remittitur of such excess. If such remittitur is so filed, then the court shall reform and affirm such judgment in accordance therewith; if not filed as indicated then the judgment shall be reversed."

The Supreme Court of Texas has held that a determination of excess by a Court of Civil Appeals is one of fact. Dallas Ry. & Terminal Co. v. Farnsworth, 148 Tex. 584, 227 S.W.2d 1017 (1950); Carter v. Texarkana Bus Company, 156 Tex. 285, 295 S.W.2d 653 (1956). Our high court has reaffirmed that such a determination is factual when it made clear that the responsibility of the various courts of civil appeals is the same as that of the trial courts. Flanigan v. Carswell, 159 Tex. 598, 324 S.W.2d 835 (1959); see also Coastal States Gas Producing Company v. Locker, 436 S.W.2d 592 (Tex.Civ.App.—Houston 14, 1968).

The Honorable Eugene L. Smith, in an article entitled Texas Remittitur Practice, 14 Southwestern Law Journal 150, agrees that a determination of an excess judgment in an unliquidated damage case is one of fact. He suggests that a prudent lawyer who wishes to attack a verdict as excessive would do well to allege that the verdict was "so excessive as to be manifestly un-

just", "without support in the evidence", and/or "against the overwhelming weight and preponderance of the evidence." However "All the Court of Civil Appeals can do, and all that is required of it to do . . . is to exercise its sound judicial judgment and discretion in the ascertainment of what amount would be reasonable compensation . . ., and treat the balance as excess. . . ." Wilson v. Freeman, 108 Tex. 121, 185 S.W. 993 (1916); Flanigan v. Carswell, 159 Tex. 598, 324 S.W.2d 835 (1959).

A review of the evidence shows that Judge C. B. Neel was a distinguished lawyer and practitioner in Corpus Christi. He died in January 1965. For some twenty-five years prior to his death, Dr. J. H. Harvey had been a friend and client of Judge Neel. In 1951 Judge Neel employed John G. Seaman, the defendant, to work in his law office. Less than a year and a half prior to Judge Neel's death, he and Seaman entered into an agreement whereby their respective interests and ownership in the future operation of their law office were set out and agreed upon. In a three-page, single-spaced letter agreement, Judge Neel proposed to Seaman certain terms for the settlement and termination of their association as lawyers in the event of death, illness, disability or retirement of either of them. It was evident from such agreement, that the firm and law practice belonged to Judge Neel up until this particular time. The letter, for instance, acknowledges that the library belonged to Judge Neel and the administration of the office and bank account was carried in Judge Neel's name. The agreement authorized Seaman to carry on the firm in the firm name in the event of Judge Neel's disability or upon his death, if Seaman was still practicing with Judge Neel at such time. The agreement gave Seaman the option to purchase the law library, title opinions and files. It provided specifically for the settlement of contingent fees, property taken in as fees and gave to Seaman all the fees for work performed by him, one

month after Judge Neel's death. It then stated, however, that:

" . . . *If any work has been done upon any matters in the office prior to my death or retirement, then you and my representatives, in the event of my death, or myself upon retirement, shall agree upon the division of these fees* (that had accrued up until the time of his death (*upon an equitable basis taking into consideration the amount of work theretofore done, and as to the amount of work thereafter to be done.*" (Emphasis and Parenthesis supplied)

Seaman accepted Judge Neel's proposal.

On December 17, 1963, a will for Dr. J. H. Harvey was drawn by the firm of Neel & Seaman in which the Corpus Christi Bank & Trust Company was named Independent Executor of the Estate and trustee of a perpetual type trust set up principally for various charitable organizations. In the next to the last article of the will, it stated that:

"The executor and trustee shall employ Neel and Seaman (C. B. Neel and/or John G. Seaman) as attorneys, or attorney, for the estate of J. H. Harvey, deceased, and the trust created herein; but upon the refusal or inability of the survivor of them to act, then the executor and/or trustee shall employ counsel of their own choosing and *pay to the attorneys acting for such executor and trustee reasonable fees for their services.*" (Emphasis supplied)

On January 8, 1965, Dr. Harvey died leaving an estate consisting primarily of land and oil, gas and mineral interests valued in excess of 2½ million dollars. Immediately upon Dr. Harvey's death, the Corpus Christi Bank & Trust Company employed Neel and Seaman as their attorneys. Judge C. B. Neel commenced at once the business of representing the independent executor in the probate of this estate. Judge Neel conducted the initial interview with the executor relative to Dr.

Harvey's estate; prepared the application for the probating of the will; set the hearing for such application; and attended and conducted the hearing in the probate court on behalf of the estate which culminated in admitting the will to probate. He prepared the order probating the will. He secured the necessary judicial approval of the order, and prepared and filed the oath of the independent executor.

On January 29, 1965, Judge Neel died. Seaman succeeded to the law practice of Neel and Seaman conducting the same under the firm name. He continued to represent the executor of Dr. Harvey's estate. All matters relative to the financial arrangement of the law firm were settled and concluded with Seaman buying the library and settling all accounts with Judge Neel's widow, except the Harvey estate. Seaman continued his law practice by himself for several months and then joined the firm of Keys, Russell, Keys & Watson. He became a partner in their firm.

In January 1966 Seaman billed the executor for $15,000.00 for "professional services rendered." This was promptly paid by the Bank. On January 4, Seaman wrote to Mrs. Neel stating that he had collected the sum of $15,000.00 from the Bank as executor of Dr. Harvey's Estate for services in connection with the estate. He stated that:

"In accordance with the letter agreement between Judge and myself, and taking into consideration the services rendered to the Estate prior to the Judge's death, and after careful consideration and much study, *it appears to me that your fair share of the total fee to be charged in the Harvey Estate would be the sum of* $5,000.00, and I hand you herewith check of this firm in the said amount as payment in full in connection with said estate." (Emphasis supplied)

A few days later, Mrs. Neel returned the check to Seaman stating that she was returning the check because:

". . . I feel the present time and this check in the amount of $5,000.00, is premature.

"After the Harvey Estate is finally and completely settled, I will be happy to fully discuss the Neel and Seaman partnership settlement of this matter with you and Mr. Keys."

In July 1966, Seaman billed the executor for another $15,000.00 for "professional services rendered." This was also promptly paid without question. Seaman made no further written offer then, or any time thereafter, to settle the fee with Mrs. Neel except upon the initial unilateral proposal made in January 1966. Whereupon Mrs. Neel, as independent executrix of the estate of C. B. Neel, brought suit against Seaman to determine and adjust the contractual rights which grew out of the letter agreement between Judge Neel and Seaman while they were practicing together.

During the trial, the Honorable Robert W. Blount, an attorney and head of the Trust Department of the Corpus Christi Bank & Trust, testified relative to the Harvey Estate. He stated that he was Vice President of the Bank as well as the trust officer. He said he had the primary responsibility for the handling of the Harvey Estate. He testified that the Bank as executor had employed Neel and Seaman as their attorneys to probate the Harvey estate. He testified in effect that the Bank had always employed the lawyer or lawyers named in a will as a matter of policy; that this was also the same policy of the two other institutions where he had worked. He testified that although Seaman had joined a new firm, the Bank would continue to employ Mr. Seaman as their attorney for the estate and the subsequent trust as directed by the will. On direct examination he said that, the only way the Bank would discharge the attorney so employed, would be if the attorney totally failed to carry out the wishes of the deceased.

Turning now to the evidence concerning the fee arrangement: The will called for the payment of a reasonable fee. Both trust officers of the Bank stated that the executor would be willing to pay a reasonable attorney fee in connection with the probate of the estate. Blount stated that he had always adhered to the policy of approving the fee of an attorney, if the attorney submitted his fee based upon the recommended minimum set by the State Bar; that they would honor such fee as he had always felt that an attorney could enforce such a fee in a court of law, anyway, if it was based upon the minimum fee set forth by the State Bar of Texas. He testified further that most attorneys that he had dealt with throughout the years, based their fee upon the recommended minimum set by the State Bar. Evidence later received was, that the State Bar minimum fee was 3% of the gross estate.

Mr. Morrison, the Bank's trust officer at the time of the trial and who had been with the Bank about ninety days, acknowledged that the Bank would have the duty to pay a reasonable fee in connection with the Harvey estate. He stated that he had practiced law in San Antonio before coming to Corpus Christi; that basically the recommended fee in San Antonio, was 3% of the gross estate as is contained on the estate tax return. Although he did state that the Harvey fee would require some substantial study, he admitted that the 3% fee "would be in the ball park". The minimum fee schedule adopted by the State Bar, calls for additional fees for additional services. This may account for Morrison's statement requiring substantial study.

Mrs. Neel called the Honorable Richard B. Stone, a practicing attorney in Corpus Christi as an expert witness. He was presently serving as President of the Nueces County Bar Association. He testified that 3% of the gross estate would be a fair minimum fee for handling an estate of between 2½ and 3 million dollars. That so far as lawyers in Nueces County were concerned, they had, by and large, been following the 3% figure. He also testified that in his opinion and from his experience that one of the factors in the division of fees between attorneys, is the consideration of who actually produced the work or the client. After a lengthy direct and cross-examination, witness Stone testified that he had an opinion as to a reasonable fee for the work done by Neel and Seaman up to the time of Judge Neel's death. The following hypothetical question was put to him:

"Q I would like for you to assume the following facts as being true, that there was two lawyers associated in the practice of law in Corpus Christi, Neuces County; that a client came and asked that a will be prepared; that this will provided that the Corpus Christi Bank & Trust would be the independent executor of that estate; that the will also provided that this law firm shall be appointed as attorneys for the estate and as attorneys for a trust which was created by the instrument which provided that the bulk of the estate would go to charitable institutions, the income from the estate would go to charitable institutions, and that the remainder of—that the money would remain in trust and only the income would go these beneficiaries; that it was to be perpetuity, the trust. I would like for you to further assume that the testator of this will died and that the estate had a gross value for the purpose of taxation of not less than $2,539,000; that one of the attorneys gathered the initial information concerning getting the material ready for probating the will; that a responsible officer, a trust officer of this bank and trust has testified under oath that he would pay or be agreeable to paying a three per cent of the gross taxable fee as an attorneys' fee; that after the death of the testator, one of the lawyers did the following things: That he conducted the initial interview and gather the material relevant to filing of the application; that he prepared the application for the probating of the will. He had the application set down for a

hearing. He attended and conducted, on behalf of the estate, a hearing on the above application; that he prepared the order probating the will. He secured the necessary judicial approval of such order and that he prepared and filed the oath of the executor; that thereafter, he died. Now, taking into account those factors, what, in your opinion do you believe would be a fair—" (objection)

"* * * fee for the work done up until that time, the time of the death of the lawyer that I have referred to?

A In my opinion, the reasonable value for those services down—up to that time would be $38,000."

The testimony was virtually undisputed that a reasonable minimum fee for the probate of an estate of the size of the Harvey estate would be 3% of the gross estate. This would amount to a reasonable minimum fee of from $76,000.00 to $80,000.00. The Bar Association's minimum fee schedule further provides for additional fees for additional work in connection with an estate. There is absolutely no question that a reasonable fee would be charged and collected in this case. The testator in his will directed the executor bank to pay a reasonable fee. The Bank acknowledged its duty and willingness to pay a reasonable attorney's fee. The appellant admits he will charge only a reasonable fee.

Appellant, on the other hand, throughout his brief attempts to equate the fee to an hourly charge. Only one witness testified that a reasonable fee for the work performed should be based on an hourly basis. However, all of the other witnesses (four in number) plus the appellant himself rejected this basis. One of the reasons that we consider that the Bar Association's recommended minimum fee is based on a percentage, is that a fee based on strictly an hourly rate would not be fair to the lawyer or the client. Numerous times throughout the trial the appellant was given an opportunity to testify as to what a reasonable fee would be in the case at hand. He

steadfastly refused. He admitted that he had collected $30,000.00 on two billings without the same being set on an hourly basis. He admitted that he would expect to receive an additional $30,000.00 for a total of at least $60,000.00.

There was evidence that approximately one half of the items necessary to be performed by attorneys in connection with the probate of an estate, had been performed by Judge Neel. This included the very important initial interview with the client, and the securing of the employment for the law firm. We recognize the importance of this initial interview by Judge Neel on behalf of the law firm. First the testator must have complete trust and confidence in a particular attorney or attorneys to recommend in his will that they be employed as attorneys for the executor. The executor must then re-confirm this confidence, recognizing the skill and competence of the attorney and his firm, by placing the handling of such an important item of business with such attorneys. Following this important stage of the work, Judge Neel individually performed four of the nine agreed necessary items for the probate of a typical estate. Of the remaining five items to be performed after Judge Neel's death, some were done solely by the executor bank, some were performed by the executor bank with the aid and assistance of the testator's accounting firm and some by Seaman individually and some by Seaman with the help of the accounting firm. There was no attempt by Seaman to account for the importance of the work performed by others or value the work performed by himself. Although there was testimony that Seaman's law firm had performed approximately 500 hours of work in connection with the estate, the evidence was that most of this work was in the nature of extra services that would not necessarily be included as a part of a minimum fee. These were services in connection with a settlement of a will contest, ancillary administration, and other related matters. If you considered the 500 hours performed were routine then at a

minimum fee of $30.00 per hour, this would amount to only $15,000.00 and would leave unaccounted some $61,000.00 ($76,000.00 minimum, less $15,000.00) as a minimum fee for the handling of the routine matters in connection with the probate of the estate.

The legal work in connection with the Harvey estate was to be continued on after the initial probate in representing the perpetual trust. The initial employment included employment thereafter by Seaman as attorney for the perpetual trust. Although this evidence was not to be taken into account directly in figuring the amount of fee due Mrs. Neel as her husband's share during the time that he lived, it was relevant in consideration of the importance in securing the initial item of business and the prompt work performed by Judge Neel in getting the will admitted to probate, prior to his death.

Other evidence showed that Seaman's prior firm (Neel and Seaman) had received a fee of $55,000.00 for the handling of an estate of less than one-fifth the size of the Harvey estate. Although the appellant stated that this fee also included some extra work performed by the firm prior to the handling of the estate, Seaman was uncertain as to how much this amounted to and did not attempt to clarify it later.

As to the value of the services that were rendered by Judge Neel and appellant Seaman to the Harvey estate between the time of Harvey's death and the death of Judge Neel, testimony was received valuing these services from $400.00 upwards to $38,000.-00. The jury found from the evidence that the reasonable value of such services for this period of time was $36,500.00. The jury further found that an equitable division of this amount, taking into consideration the amount of work theretofore done as to the amount of work to be done, would be sixty percent for Mrs. Neel (i. e. $21,900.00) leaving $14,600.00 for Seaman during this same period of time. Of course, the jury was authorized to consider the fact that Seaman would be permitted to collect an additional amount of approximately $40,000.00, plus such reasonable charges for the extra work performed in connection with the estate for work done after Judge Neel's death.

■ We have carefully considered the question of excessiveness and have determined from the entire record and in the exercise of our judicial judgment and discretion that the verdict was not excessive so that this Court would be justified in disturbing the jury's findings. Dallas Ry. & Terminal Co. v. Farnsworth, supra; Southland Life Ins. Co. v. Norton, 5 S.W.2d 767 (Tex.Com.App.—1928, opinion adopted). Following the guidelines announced by our Supreme Court, we hold that the amount found by the jury was reasonable. Appellant's first point of error is overruled.

■ Appellant's second point is that a money judgment should not have been rendered against Seaman because it is based on jury findings of the value of legal services rendered for the executor bank and the fee for such services had not been agreed upon or paid by the executor and the executor is not bound by the verdict and judgment. This point is without merit. On the first appeal of this case (Seaman v. Neel, 461 S.W.2d 659, Tex.Civ.App.—Corpus Christi 1970, reversed 466 S.W.2d 278, Tex.Sup.1971) appellant sought reversal of the trial court's judgment, primarily contending that the executor bank was an indispensable party because it had a joint interest in the controversy and therefore a money judgment should not be rendered against Seaman individually. The argument here is essentially the same argument that was presented in the prior appeal. The Supreme Court held in reversing this Court on the first appeal, that:

" . . . The Bank as independent executor does not have a 'joint interest' in the settlement of the controversy between petitioner and respondent, and a judgment in this case would not be res judicata of a subsequent suit against the

Bank for the recovery of legal fees incurred in connection with the administration of the estate of J. H. Harvey, deceased. . . . ." Neel v. Seaman, 466 S.W.2d 268 (Tex.Sup.1971).

The written agreement between Judge Neel and Seaman required Seaman to share the fee with Mrs. Neel in her representative capacity, on an equitable basis, considering the amount of work performed and the work thereafter to be done. This he refused to do, which gave rise to Mrs. Neel's cause of action. This suit has always been a suit by Mrs. Neel against Attorney Seaman for the share of the attorney fees due her husband's estate in connection with the representation of the executor bank. It was Attorney Seaman who chose not to make the Bank a party to the suit. The undisputed evidence shows the Bank is looking only to Seaman as its attorney and will continue to look to Seaman in the future, regardless of his partnership affiliation. It was through the efforts of Seaman that Seaman had already collected $30,000.00 from the executor bank. This was a sufficient amount to have paid Mrs. Neel the amount found to be due her by the jury. Seaman testified that he expects to charge an additional $30,000.00. He originally offered to give Mrs. Neel only $5,000.00 of the amount he collected. He has never suggested that she is not entitled to some percentage of the fee. In fact he admits in his brief that special issue number 2 was proper. It stated:

"What do you find from a preponderance of the evidence to be an equitable division of fees for work done on the J. H. Harvey Estate prior to January 29, 1965, taking into consideration the amount of work theretofore done and as to the amount of work thereafter to be done?

"Answer by stating a percentage.

"Answer: Plaintiff 60 per cent.

"Answer: Defendant 40 per cent."

He now suggests that Mrs. Neel's fair share of the total fee should be approximately $6,000.00.

Seaman was in control of and will eventually dictate the amount he will finally charge the independent executor. The jury verdict only set the reasonable amount that should be charged for the interim term in which Mrs. Neel was interested. The Bank had no interest as a divisor of the fee between the parties. It was and is obligated to pay a reasonable fee. It has agreed to do so. Seaman stated that he would charge a reasonable fee. We believe that he will do this. Since it is undisputed that the Bank will pay a reasonable fee, and, since the jury found from the evidence that the amount owed by Seaman to Mrs. Neel was a portion of such a reasonable fee, we see no basis for reversal. This point of error is also overruled.

Appellant's third point complains of the trial court in permitting the filing of a trial amendment after both parties had rested and the evidence had been completed. The case went to trial on Mrs. Neel's fourth amended petition. It alleged that she was entitled to recover because of a partnership that existed between Judge Neel and Attorney Seaman and that certain provisions of the Texas Uniform Partnership Act had been violated. Alternatively, she sought her share of the fee of the Harvey estate based as a result of the joint venture between Judge Neel and Attorney Seaman in their firm. Additionally, she sought and again in the alternative, that Seaman had breached the letter agreement which entitled her to damages; finally, she pled that she was entitled to recover from Seaman a fair fee of the fee of the Harvey estate as a result of the association between her husband, Judge Neel, and Attorney Seaman.

One of the witnesses for Mrs. Neel was Attorney Richard Stone. His testimony in part was based upon the hypothetical question. Attorney Stone stated that the reasonable value of the services for the work performed until the time of the death of

the lawyer involved would be $38,000.00. No complaint is made of this hypothetical question on appeal. Each item of work performed by Judge Neel was detailed in the hypothetical question. There was evidence admitted during the trial without objection as to each item. The trial amendment listed all of the same items of work performed by Judge Neel. The trial amendment then alleged that apart and aside from any agreement that may have existed between C. B. Neel and the defendant John Seaman, C. B. Neel, from the period of Dr. Harvey's death on January 8 until the time of C. B. Neel's death on January 29, 1965, rendered legal services to the J. H. Harvey estate and that a reasonable fee in and around Nueces County for such services was in the amount of $38,000.00. Plaintiff then prayed for judgment of this amount in addition to the other damages alleged in this petition. The trial court refused the plaintiff any other issues relative to the additional damages or relative to any other theory of the case.

Appellant argues that by inferences the trial amendment asked for judgment against Mr. Seaman for the fee for services performed by Judge Neel prior to his death, plus 60% of the entire fee of the entire administration. The special issues submitted by the trial court settled this argument.

■ A review of the entire pleadings and all of the evidence upon which the case was tried indicates to us that the trial amendment was proper. It is universally recognized that Rule 66, T.R.C.P., expressly authorizes trial amendments. The law vests in the trial court judicial discretion with regard to the filing of trial amendments. The court's order permitting a trial amendment will not be disturbed on appeal unless an abuse of discretion clearly appears. Vermillion v. Haynes, 147 Tex. 359, 215 S.W.2d 605 (1948); Cox v. Piwonka, 257 S.W.2d 955 (Tex.Civ.App.—Galveston 1953, err. dism.); Texas Employers Ins. Ass'n v. Sanders, 265 S.W.2d 219 (Tex.Civ.App.—Texarkana 1954, wr.

ref'd n. r. e.); Kolacny v. Pelech, 201 S. W.2d 257 (Tex.Civ.App.—Galveston 1947); Keelin v. Hamilton, 430 S.W.2d 268 (Tex. Civ.App.—Dallas 1968) and authorities therein cited. See particularly Rose v. Shearrer, 431 S.W.2d 939 (Tex.Civ.App.—San Antonio 1968) and Rule 67, T.R.C.P.

The appellant has not in any way demonstrated to us how the trial amendment caused or probably caused rendition of an improper judgment, (Rule 434, T.R.C.P.) or that the trial judge abused his discretion in permitting the filing of the same. (Rules 66 and 67, T.R.C.P.). Appellant's third point is overruled.

■■ The appellant's fourth point complains of the ruling of the trial court in overruling his plea in abatement to the effect that the law firm of Keys, Russell, Watson & Seaman should have been made parties to this suit. This point has been decided adversely to the appellant by this court in the original and dissenting opinions during the first appeal. The law partnership was not a party to the contract between Neel and Seaman. Appellant's relationship to the law firm came about as an effort of his own doing. The association commenced after Judge Neel's death. The plaintiff did not seek recovery against the law firm and the defendant made no effort to make them a party. The present law firm is in no way bound by the present judgment. A defendant may not complain on appeal of the non-joinder of a proper party when he could have impleaded the party himself. Jasper & E. Ry. Co. v. Peek, 102 S.W. 776 (Tex.Civ.App.1907, err. ref'd).

The judgment of the trial court is affirmed.

SHARPE, Justice (dissenting).

I respectfully dissent.

This appeal is from a judgment rendered after jury trial in favor of appellee against appellant in the amount of $21,900.00. The case is now before us on remand by the

Supreme Court. See 466 S.W.2d 278 (1971). We originally held that the judgment of the trial court must be reversed and the cause remanded for the joinder of a necessary and indispensable party. 461 S.W.2d 659 (1970). Other questions were not decided. After the case was remanded to this Court, we ordered the parties to file amended briefs. The contentions of the parties have been considerably narrowed as will be more fully hereinafter pointed out. In order to place the issues in proper context, portions of the original opinion will be repeated.

Appellee, Adrienne Neel, as Independent Executrix of the estate of C. B. Neel, deceased, sued appellant, John G. Seaman, to recover a portion of legal fees for services rendered in connection with administration of the estate of Dr. J. H. Harvey, deceased. Corpus Christi Bank & Trust was the independent executor of said estate, but was not made a party to the suit.

Appellee's Fourth Amended Original Petition alleged in substance the following: Appellant, John G. Seaman is an attorney at law. Appellee, Adrienne Neel, is the widow of C. B. Neel, deceased, and the legal representative of his estate. C. B. Neel was for many years a practicing attorney at law in Corpus Christi, Texas, and for some years prior to his death maintained an office in that city with appellant John G. Seaman for the practice of law. On September 11, 1963, C. B. Neel and John G. Seaman entered into a written agreement, in the form of a letter from Neel to Seaman, concerning their respective interests and the operation of their law office. The provision most directly involved reads as follows:

"It is distinctly understood that the fees accruing during the calendar month in which I die, or retire, shall be divided upon the basis above indicated, and fees for all work done after the said calendar month shall belong to you. If any work has been done upon any matters in the office prior to my death or retirement, then you and my representatives, in the event of my death, or myself upon retirement, shall agree upon the division of these fees upon an equitable basis taking into consideration the amount of work theretofore done, and as to the amount of work thereafter to be done."

Appellee further alleged in substance the following: A partnership existed between Neel and Seaman under which they shared all expenses related to operation of the law practice and Neel received 60% and Seaman 40% after the deduction of the operating expenses from gross fees that were received. C. B. Neel died on January 29, 1965, leaving his estate to appellee. All matters concerning the law practice were resolved except as to the estate of Dr. J. H. Harvey. Neel and Seaman had prepared a will in 1963 for Dr. Harvey who died on January 8, 1965. The will named Corpus Christi Bank & Trust as independent executor for the estate of J. H. Harvey, deceased. Appellee further alleged that appellant had billed and received $30,000.00 from Corpus Christi Bank & Trust, the independent executor of the Harvey estate, as partial fee prior to the filing of this suit; that appellant had breached the contract between him and C. B. Neel because he had failed to divide the fee in the Harvey estate on an equitable basis; that certain provisions of the Texas Uniform Partnership Act had been violated; that, alternatively, a joint venture existed between Neel and Seaman and appellee was entitled to share in the fee from the Harvey estate on such basis; that, alternatively, if the contract between Neel and Seaman was not breached by the latter, that appellee should be entitled to recover C. B. Neel's fair share of the attorneys' fees from the Harvey estate based on an equitable division of the fee taking into consideration the amount of work theretofore done and the amount of work thereafter to be done, which share would be a sum of at least $60,000.00.

After the evidence had closed, appellee, over objection of appellant, was granted

leave to file a trial amendment which, omitting formal portions, reads as follows:

"Plaintiff says that subsequent to the death of Dr. J. H. Harvey on January 8, 1965, the Plaintiff's deceased husband, C. B. Neel, performed certain services for the J. H. Harvey estate which were as follows: he conducted the initial interview concerning the application for probating the estate of J. H. Harvey; he prepared an application for the probating of the will of Dr. J. H. Harvey; he had such application set down for hearing; he attended and conducted on behalf of the estate of J. H. Harvey the hearing on the above application; he prepared the order admitting the will to probate; he secured the necessary judicial approval of such order; he prepared and filed the oath of the independent executor nominated in such will; further, he wrote such letters and performed other services connected with the initiation of probate proceedings in connection with the J. H. Harvey estate.

Apart and aside from any agreement which may have existed between C. B. Neel and the Defendant John G. Seaman, Plaintiff says that C. B. Neel from the period of Dr. Harvey's death on January 8, 1965 until the time of C. B. Neel's death on January 29, 1965, that C. B. Neel rendered legal services to the J. H. Harvey estate and that a reasonable fee in and around Nueces County, Texas, for such services is the amount of THIRTY EIGHT THOUSAND AND NO/100 ($38,000.00) DOLLARS and Plaintiff does hereby pray judgment of the Court in this amount, in addition to the other damages alleged and pled in the Plaintiff's Fourth Amended Original Petition."

The trial court submitted two special issues to the jury which were answered as follows:

"SPECIAL ISSUE NO. 1

What do you find from a preponderance of the evidence to be the reasonable value of the legal services rendered on behalf of the J. H. Harvey Estate for the period from January 8, 1965 to January 29, 1965?

Answer in Dollars and Cents.

Answer 36500.00

SPECIAL ISSUE NO. 2

What do you find from a preponderance of the evidence to be an equitable division of fees for work done on the J. H. Harvey Estate prior to January 29, 1965, taking into consideration the amount of work theretofore done and as to the amount of work thereafter to be done?

Answer by stating a percentage.

Answer: Plaintiff 60 per cent.

Answer: Defendant 40 per cent."

The trial court rendered judgment based on the verdict that appellee recover from appellant the amount of $21,900.00, which sum represents 60% of $36,500.00.

The material facts relating to the appellant's points may be summarized as follows: Appellant, John G. Seaman, and C. B. Neel, began practicing law together in 1951. From 1951 until 1963 appellant was an associate or employee of C. B. Neel and worked with him on a salary arrangement. At the time appellant joined C. B. Neel, Mr. Neel had a very active oil and gas practice. Also, at this time, C. B. Neel had a long-time friend and client named Dr. J. H. Harvey. On September 11, 1963, appellant Seaman and C. B. Neel executed a letter agreement by which the nature of the association was changed from one in which appellant was paid a salary to one under which, in substance, he was to receive 40 per cent of the net profits from the operation of their legal association. Appellant and C. B. Neel operated under this agreement from September 11, 1963, until the time of C. B. Neel's death. On January 8, 1965, Dr. J. H. Harvey died leaving a will dated the 17th day of December 1963, in which the Corpus Christi

Bank & Trust Company was named the independent executor. This will also provided that "The executor and trustee shall employ Neel and Seaman (C. B. Neel and/or John G. Seaman) as attorneys, or attorney, for the estate of J. H. Harvey, deceased, and the trust created herein." Upon Dr. Harvey's death, Neel and Seaman commenced to represent the Corpus Christi Bank & Trust Company, as the independent executor of the J. H. Harvey estate. The value of that estate was approximately 2½ million dollars. On the 29th of January, 1965, C. B. Neel died. All matters relative to the financial arrangements between C. B. Neel and the appellant were concluded with the one exception which constitutes the subject matter of the present lawsuit, to-wit, the extent to which the appellee was to participate in the fee from the J. H. Harvey estate. Representation of the Executor Bank was continued by appellant following C. B. Neel's death until approximately June of 1965 when appellant formed a partnership for the practice of law with the members of the firm of Keys, Russell, Keys & Watson, which thereafter practiced under the name of Keys, Russell, Watson & Seaman. Subsequent to the formation of that partnership, various members of it performed legal services in connection with the estate of J. H. Harvey. In January and July, 1966, the firm of Keys, Russell, Watson & Seaman billed the Corpus Christi Bank & Trust for $15,000.00 or a total of $30,000.-00. Each of these billings, which were paid by the bank, was on an interim basis and did not designate for what legal services such bills were being rendered. On January 4, 1966, the appellant Seaman wrote the appellee, Mrs. Neel, a letter on the stationary of Keys, Russell, Watson & Seaman and enclosed therewith a check in the amount of $5,000.00, which purported to represent Mrs. Neel's share in the fee from the J. H. Harvey estate. Mrs. Neel, by letter dated January 17, 1966, returned the check stating in substance that she felt it was premature and that after the Harvey estate was finally settled she would be happy to discuss settlement of the matter with appellant and Mr. Keys. No agreement was ever made between Neel and Seaman or John G. Seaman or Keys, Russell, Watson & Seaman and the Corpus Christi Bank & Trust Company as to the total fee to be charged for the legal services connected with the administration of the Harvey estate. The interim billings of $15,000.00 each were made without any negotiations with the Corpus Christi Bank & Trust Company and in these billings there was no indication of what amount remained to be paid nor any indication as to what services the billings applied to. Since July of 1966 no further bill has been submitted to the Corpus Christi Bank & Trust Company for the legal work which has been done on the Harvey estate by appellant or the law firm of which he is a member. The record shows that counsel for appellee wrote a letter to the Executor Bank stating in substance that further payments of attorneys fees to appellant or his new firm would be made at the peril of said Executor Bank. Appellant testified that he or members of the law firm with which he is is now associated had spent over 500 hours in handling legal matters in connection with the administration of the estate. The J. H. Harvey estate is still in administration. All matters other than routine are referred to the trust committee of the executor bank, which makes the final decision and Mr. Morrison, the bank trust officer at the time of trial testified that without substantial study he would not recommend to the trust committee a fee in the Harvey estate. The firm of Keys, Russell, Watson & Seaman continued to represent said bank, as independent executor of said Dr. J. H. Harvey estate, and was still doing so at the time of trial of this cause.

Appellant's amended brief asserts four points of error as follows:

### "First Point

Judgment should not have been rendered on the verdict because $36,500.00 as the

fee for the amount and kind of the work done in the short period involved is excessive to the point of being unconscionable.

### Second Point

A money judgment should not have been rendered against Seaman because it is based on a jury finding of the value of legal services rendered for the Executor Bank, and the fee for such services had not been agreed upon or paid by the Executor and the Executor is not bound by the verdict and judgment.

### Third Point

The trial court erred in permitting the filing of Plaintiff's Trial Amendment after both parties had rested and the evidence had been completed.

### Fourth Point

The trial court erred in overruling the pleas in abatement setting forth that the law firm of Keys, Russell, Watson & Seaman should have been made parties to this suit."

Before specifically considering appellant's points, some of the matters which are not now involved and need not be decided in the present posture of the case will be discussed. First, we are not concerned with the value of legal services rendered on behalf of the Harvey estate *after* the death of Mr. Neel on January 29, 1965. Special issue No. 1 limited the time for which the value of such legal services could be considered to the period from January 8, 1965 to January 29, 1965. Appellee did not object to special issue 1, and has not complained of its submission in the trial court or in this court in any way. Appellee's brief clearly shows that this position was deliberately taken and, therefore, we are not faced with any cross-appeal or cross-points asserted by appellee. Throughout the trial until the evidence was closed appellee took the position that she was entitled to 60% of the total fee to be charged for legal services in the Harvey

estate. Appellee's trial amendment was tendered after the evidence was closed and was filed over objection of appellant. Special issue 1 was based on appellee's trial amendment and not on any of the theories included in appellee's fourth amended petition on which the case was tried.

We are also not now concerned with the percentages found by the jury answer to special issue number two. Appellant does not complain of that answer because under the contract between Neel and Seaman the appellee's portion of the fee for the work done before the death of Mr. Neel should be 60% of the total fee properly fixed for the period prior to January 29, 1965, which percentage was the same as that found by the jury.

Appellant's first point, which asserts in substance that the jury finding of $36,500.-00 as the fee for the amount and kind of work done in the short period involved (January 8 to 25, 1965) is excessive, will now be considered. Appellee called two witnesses in connection with the questions concerning attorney's fees. Her principal expert witness was Hon. Richard B. Stone, a Corpus Christi attorney who was at the time of trial serving as President of the Nueces County Bar Association. The other witness was Mr. Robert W. Blount who testified by way of deposition. It is undisputed that Mr. Blount was no longer connected with the executor bank at the time of trial. In addition to his own testimony, appellant called as witnesses on the question of attorney's fees, Hon. James C. Martin and Hon. David M. Coover, both practicing attorneys of Corpus Christi, Texas.

Mr. Stone testified in substance that in his opinion three (3%) percent of the gross estate would be a fair minimum fee for handling an estate the size of the Harvey Estate; that so far as lawyers in Nueces County were concerned they had by and large been following the three (3%) percent figure. He also testified that in his

opinion and from his experience that one of the factors in the division of fees between attorneys is the consideration of who actually produced the work or the client. Mr. Stone testified in answer to the hypothetical question, hereinafter set out, that in his opinion the reasonable value of the services rendered to the executor bank from the date of the death of Dr. Harvey until Judge Neel's death would be $38,000.00.

On cross-examination, Mr. Stone was shown the instruments prepared by Mr. Neel during the 21-day period prior to his death, to-wit, the application for probate of the will and for letters testamentary, the order probating the will and granting letters testamentary, and the oath of the executor. Mr. Stone testified in substance that those instruments are standard documents that would be filed in an estate and are ordinary instruments in any estate; that he noticed nothing in those instruments different or unusual except one big factor, to-wit, the amount of the estate; that it is a considerably large estate, but that as to the phraseology in the instruments themselves they are standard, ordinary, that would be involved in any probate; that the actual preparation of the papers is not any more difficult than in a $10,000 estate. When asked what was a reasonable period of time in which to actually sit down and prepare those papers, Mr. Stone stated that "I would estimate probably from the time of death to the contact with the executor, the initial conference, probably 12 to 15 hours". He testified that when the application is filed it is the responsibility of the attorney to see that the citation has been issued correctly, that it is the practice of the clerk to send a copy to the attorney and it is up to the attorney to examine it and be sure that correct citation has been issued, and that the citation can be examined in not more than 30, 45 minutes. He further testified that the fact that the will was a self-proved will facilitates the probate, that witnesses do not have to be called in and from the pure time element it does facilitate the probate of the will.

On direct examination Mr. Stone had been asked to assume that the law firm of Neel and Seaman had been requested by a provision of the will to be appointed attorneys for the independent executor, that Dr. Harvey had been Judge Neel's client for many years, that the value of the gross estate for the purpose of taxation was no less than $2,539,000, and then to state what in his opinion would be a fair minimum fee for the handling of the estate, and he stated that he would apply the 3% of gross estate percentage. On re-direct examination Mr. Stone was asked the following question:

"Q I would like for you to assume the following facts as being true, that there was two lawyers associated in the practice of law in Corpus Christi, Nueces County; that a client came and asked that a will be prepared; that this will provided that the Corpus Christi Bank & Trust would be the independent executor of that estate; that the will also provided that this law firm shall be appointed as attorneys for the estate and as attorneys for a trust which was created by the instrument which provided that the bulk of the estate would go to charitable institutions, the income from the estate would go to charitable institutions, and that the remainder of—that the money would remain in trust and only the income would go these beneficiaries; that it was to be perpetuity, the trust. I would like for you to further assume that the testator of this will died and that the estate had a gross value for the purpose of taxation of not less than $2,539,000; that one of the attorneys gathered the initial information concerning getting the material ready for probating the will; that a responsible officer, a trust officer of this bank and trust has testified under oath that he would pay or be agreeable to paying a three percent of the gross taxable fee as an at-

torneys' fee; that after the death of the testator, one of the lawyers did the following things: That he conducted the initial interview and gather the material relevant to filing of the application; that he prepared the application for the probating of the will. He had the application set down for a hearing. He attended and conducted, on behalf of the estate, a hearing on the above application; that he prepared the order probating the will. He secured the necessary judicial approval of such order and that he prepared and filed the oath of the executor; that thereafter, he died. Now, taking into account those factors, what, in your opinion do you believe would be a fair—

THE COURT: Do you have an opinion first, and then if there be objections—

Q Based on those factors, can you give an opinion of what would be a fair attorneys' fees up until the time of the death of the first lawyer?

A I have an opinion, yes."

After objections to the question were overruled, Mr. Stone answered: "In my opinion, the reasonable value for those services down—up to that time would be $38,000." It is apparent that Mr. Stone was saying that for the work done as outlined in the question a reasonable fee would be one-half of the entire fee for representing the executor throughout the entire administration of the estate, since the figure of $38,000 is almost exactly half of 3% of the value of the estate as used in the question, and Mr. Stone had previously testified that a reasonable fee for handling the entire estate would be 3% of the gross value.

On further extended cross-examination, Mr. Stone testified that he had taken into consideration in stating his opinion that a reasonable fee would be $38,000 the fact that he understood that the executor had agreed upon a total fee of 3%, but in answer to other questions worded in various ways (because there was no evidence that

a fee of 3% had been agreed upon) Mr. Stone did not change his opinion that the reasonable fee for the work done as outlined in the hypothetical question would be $38,000. Mr. Stone ended his answers to that line of questioning by saying: "I would base it upon a three per cent if there had been no prior—assuming that there had been no prior communications with the executor as to what it would be, I would apply—I would apply the three per cent standard to the entire probate matter, and again, it's my opinion that when you have reached that stage in the yardstick of a probate matter that you are kind of downhill a little bit and fifty per cent of the job has been done and I would apply the three per cent standard to it and use half of that."

Mr. Stone later testified that there are other factors which go along with the administration of an estate where a lawyer has to render services other than filing the application, getting the order admitting the will to probate, the inventory, and the tax return, and that a reasonable hourly charge for those other matters and the customary charge there is either forty or thirty dollars an hour. He was then asked "And in connection with any serious problems like will contest and that sort of thing, that is still what you would think would be reasonable?" Mr. Stone's answer was "Yes, if you were using strictly an hourly basis, I think that charge would be reasonable".

Mr. Stone, acknowledged on cross-examination that the Nueces County Bar Association rejected the State Bar Minimum Fee suggestion of 3% and agreed that it be changed to 3% or $30.00 an hour, whichever was the lesser, with a minimum of $250.00, and that there has been no change in the Nueces County Bar Association's Minimum Fee Schedule. Mr. Stone also testified that if a fee arrangement is worked out on an hourly basis, the Nueces County Bar minimum fee would be a reasonable fee and that there are definitely a number of lawyers that work out an hourly fee arrangement on probate matters.

Mr. Robert W. Blount, an attorney, and at one time head of the Trust Department and Vice President of the Corpus Christi Bank & Trust testified by deposition relative to the Harvey estate. Mr. Blount was not connected with the executor bank at the time of trial. He testified in substance that he was Vice President of the bank as well as the trust officer; that he had the primary responsibility for handling the Harvey estate; that he had always employed a lawyer or lawyers named in a will as a matter of policy; that this was the same policy the two other institutions used where he had worked previously; that although Mr. Seaman had joined a new firm the bank would continue to employ Mr. Seaman as their attorney for the estate and subsequent trust as directed by the will. He further testified that the only way the bank would discharge the attorney so employed would be if the attorney totally failed to carry out the wishes of the deceased. Mr. Blount stated that he had always adhered to the policy of approving the fee of an attorney if the attorney submitted his fee based on the recommended minimum set by the State Bar; that they would honor such a fee as they always felt that an attorney could enforce such a fee in Court anyway if it were based upon the minimum set forth by the State Bar of Texas. He further testified that most attorneys whom he had dealt with throughout the years based their fees upon the recommended minimum set by the State Bar.

Mr. James C. Martin, a Corpus Christi attorney, called as a witness by the defendant, in response to a hypothetical question testified that in his opinion a reasonable fee for the work done prior to the death of C. B. Neel, as outlined in the question, would be "In the neighborhood of $10,000."

Mr. David M. Coover, a Corpus Christi attorney who had been practicing in Nueces County thirty-five years, was called as a witness by defendant. He stated that his practice had been limited largely to corporate matters, real estate, and probate, and that his probate practice was 50% or more of his practice, and that he had handled estates both large and small. In response to a hypothetical question as to what would be a reasonable fee for the enumerated services performed prior to the death of Mr. Neel, stated that the preparation of the application and order, seeing that the notices are properly posted and returned, and the hearing for the purpose of securing the admission of the will, are all elementary in the probate practice and that he personally put it on a hourly basis, somewhere thirty to fifty dollars an hour, that such services require nothing special, "It's almost perfunctory", and that he thought fifty dollars per hour "would be tops". On cross-examination Mr. Coover testified that to calculate it in money, at thirty dollars an hour, it would be four hundred and twenty dollars for twelve hours and at fifty dollars an hour it would be seven hundred dollars on a fourteen-hour basis.

As hereinabove stated, after the death of Mr. Neel, Mr. Seaman continued to represent the executor bank. In June, 1965, Mr. Seaman formed a partnership with the members of the firm of Keys, Russell, Keys & Watson, which thereafter practiced law under the name of Keys, Russell, Watson & Seaman. About the first of March, 1965, Mr. Seaman received a letter from a Houston lawyer threatening a will contest by certain nieces and nephews of Dr. Harvey. The questions were whether Dr. Harvey, who was 94 years of age when he executed the will, and had been sick, was of sound mind and whether he had been unduly influenced by anyone. There were numerous conferences with attorneys from other cities, representing beneficiaries under the will, and with the Attorney General, and Mr. Jim Watson and Mr. Seaman, and possibly others in the firm, worked on the will contest matter. They hired a former FBI man from Houston as an investigator and he worked out of Mr. Seaman's office over quite a period of time. The threatened will contest matter extended over a period of about 23 months and was finally settled on the last

day upon which a will contest could have been filed. There were various other matters that arose during the administration, such as oil and gas leases. The estate had property in Arkansas. They had various problems with individual beneficiaries named in the will some of whom were in his office frequently wishing to obtain their bequest under the will. There was property in Louisiana. Mr. Seaman estimated that he had spent 300 or 400 hours, and very likely even more, in work done for the estate after the death of Mr. Neel, and that others in his present firm, Mr. Watson, Mr. Meredith, and Mr. Donnell had spent 100, 150 hours of their time, making a total of 500 or more hours. Three applications for an extension of time within which to file an inventory and appraisement in the estate of Dr. Harvey were filed, the first on March 25, 1965, the second on December 7, 1965 (long after Mr. Seaman became a member of the firm of Keys, Russell, Watson & Seaman), and the third on June 2, 1966. The inventory, appraisement and list of claims was filed on October 26, 1966. The difficulty was that the properties were quite extensive and scattered, and the problem of getting an appraisal of the value of the various properties. At the time of the trial, Mr. Seaman did not know what the total fee for the administration would be. The question of fees had not been discussed by Mr. Seaman with the bank, and there had been no agreement about the fee. In January of 1966·or December of 1965, the firm of Keys, Russell, Watson & Seaman billed the executor bank for $15,000 and in July, 1966 billed the bank for an additional $15,000, both bills being interim bills to be applied upon the total fee. Counsel for Mrs. Neel notified the executor bank that further payments to Seaman or his firm would be at its peril.

Mr. Lucian L. Morrison, Vice President and Trust Officer of the executor bank at the time of trial testified that the estate was still in administration at the time of the trial (in ·April, 1969), and that they had some serious tax problems. He said such problems would require a great deal of research to determine questions of law, and that there would be a substantial amount of work in connection with the mere transfer of assets from the estate into the charitable trust. Mr. Morrison further testified that the work such as was done prior to the death of Mr. Neel is the routine and mechanical portion of the administration of an estate, and in his opinion should be charged only on an hourly basis. The next question asked Mr. Morrison was whether for that work $36,000 or $38,000 was a reasonable fee, and his answer was "Absolutely unrealistic".

Appellant argues that analysis of the testimony concerning attorney's fees demonstrates that the verdict of the jury ($36,500.00 for work over a period of three weeks) is grossly excessive. If it be assumed that Mr. Neel worked 8 hours a day for the full 21-day period from the death of Dr. Harvey to the death of Mr. Neel, including even Saturdays and Sundays and each of the two dates of death, that would be a total of 168 hours of work for which $36,500 would be $217 per hour or $1738 per day. If the more realistic figure of 15 hours (as testified by plaintiff's witness) is used, a fee of $36,500 would be approximately $2,433 per hour. If the figure testified to by Mr. Martin, something in the neighborhood of $10,000.00, then at the figure of 15 hours' work that would be about $667 per hour.

It is apparent from appellant's brief that the use of those figures was not intended to be a contention that the fee for the work done before the death of Mr. Neel should be calculated on the basis of $30.00 an hour. Those figures were used to illustrate the alleged excessiveness of what the jury found to be a reasonable fee. There is nothing in appellant's brief which suggests that the fee for the work done prior to the death of Mr. Neel, about 15 hours at the most, should be arrived at on the basis of $30.00 an hour so as to make a fee of about $450.00. Appellant does not contend that this is a case in which the very mini-

mum of $30.00 an hour should be charged. However, appellant does strenuously argue that what any suggested amount might be on an hourly basis is the one most important factor in determining whether a fee is reasonable. Using the figure of 15 hours work and a fee of $10,000.00 as testified to by Mr. Martin, and which appellant contends is adequate, the fee amounts to about $667.00 per hour. The amount of $5000.00 tendered to Mrs. Neel by Mr. Seaman is the equivalent of 60% of $8,333.00, and a fee of $8,333.00 for 15 hours work would amount to $555.55 per hour. The work done by Mr. Seaman after the death of Mr. Neel, and by Mr. Seaman's new partners, including preparation for and settlement of a serious will contest threat, required much more skill than the work done before the death of Mr. Neel. If we treat the total work done after the death of Mr. Neel on the basis of 500 hours, then a charge of $555.55 per hour would call for a total fee of $277,775.00; and a charge of about $667.00 per hour, which the testimony of Mr. Martin would calculate, would call for a total fee for the work done after the death of Mr. Neel of $333,330.00. However, the highest fee mentioned in the statement of facts by anyone, including the witness offered by appellee, Mr. Stone, and the testimony of Mr. Seaman, would be a fee based on about 3% of the gross estate, or a total fee of about $76,000 to $80,000. If the fee allocated for the work done by Mr. Neel before his death is treated as $10,000, it will calculate to many times more per hour than the total fee which Mr. Seaman and his new partners could or would expect to be paid for the many hours of work performed by them.

Appellee's amended brief states in part that "It was Seaman who was in control and who should dictate the amount of the fee to be charged the Independent Executor. The widow of Judge Neel, a non-lawyer, could not negotiate with the bank, . . ." This suit shows that Mr. Seaman could not unilaterally fix the fee for the work done prior to the death of Mr. Neel and have his decision accepted as fi-

nal. By tendering to Mrs. Neel as Executrix a check for $5,000, Mr. Seaman showed his determination, after giving the matter consideration and discussing it with Mrs. Neel's brother-in-law, who had acted for her in all other matters in winding up the office affairs, that he considered a reasonable fee for the work done by Mr. Neel before his death to be about $8,333.00. Mrs. Neel showed by her reply and return of the check that she was not in agreement with Mr. Seaman's views as to the amount of the fee, and that she did not want to discuss the matter until the entire administration of the estate of Dr. Harvey was concluded. Appellant says that Mrs. Neel could have negotiated with the Bank as Executor of the Harvey Estate, in an effort to determine and collect for the services rendered by Mr. Neel before his death. Of course, the Executor Bank probably would not have agreed upon and paid a fee without Mr. Seaman also being agreeable both as to the amount and as to the division between Mr. Seaman and the Executrix of Mr. Neel's estate, but Mrs. Neel had as much right to negotiate as did Mr. Seaman. The only pleading in this case as to a fee for the work done before the death of Mr. Neel is in the Trial Amendment asserting a quantum meruit claim "apart and aside" from the agreement between Mr. Neel and Mr. Seaman and "in addition to the other damages alleged and pled in Plaintiff's Fourth Amended Original Petition".

In the case of Landa v. Shook, 87 Tex. 608, 30 S.W. 536, Emmy Dittmar, as devisee and independent executrix of the estate of Albert Dittmar, deceased, joined Albert Dittmar's former partners in the suit against Landa to collect for the services performed by Dittmar prior to his death. The Supreme Court held that the contract of employment was at an end upon the death of Mr. Dittmar and that Landa had the right to decline to accept the services of one of the other partners, that the cause of action arose incidentally, as a result of the contract, but it was not a cause of action upon the contract and was not regulat-

ed by the terms of the agreement. In other words, it was a claim in quantum meruit, the Court stating: "The case is not distinguishable from any other action for the value of services performed in which there is no express contract for the services. The cause of action accrues when the services are rendered." In our case, after the death of Mr. Neel, the Executor Bank in the Harvey Estate did not have to accept the services of Mr. Seaman alone, regardless of what the will said. Mason & Mason v. Brown, 182 S.W.2d 729 (Tex. Civ.App., Dallas, 1944, err.ref.w.m.).

At all times material to this case The State Bar Rules, Article XIII, Sections 11 and 31 were in effect. (Such Rules have recently been amended effective December 20, 1971).

Canons 11 and 31 provided as follows:

"11. Fixing the Amount of the Fee. In fixing fees, members should avoid charges which over-estimate their advice and services. A client's ability to pay cannot justify a charge in excess of the value of the service, though his poverty may require a less charge, or even none at all.

In determining the amount of the fee, it is proper to consider: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the member's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other employment while employed in the particular case or antagonisms with other clients; (3) the customary charges of the bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation, whether casual or for an established and constant

client. No one of these considerations in itself is controlling. They are guides in ascertaining the real value of the service."

\* \* \* \* \* \*

"31. Division of Fees. No division of fees for legal services is proper, except with other lawyers, based upon a division of service or responsibility, or with a forwarding attorney. But sharing commissions between forwarder and receiver, at a commonly accepted rate upon collections of liquidated commercial claims, though one be a member and the other not, is not condemned hereby, where it is not prohibited by statute."

The new and amended Rules effective December 20, 1971, set out here for purposes of information, provide in part (under Article XII, Section 8, Code of Professional Responsibility) as follows:

"DR 2–106 Fees for Legal Services.

(A) A lawyer shall not ·enter into an agreement for, charge, or collect an illegal or clearly excessive fee.

(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent."

We have not been cited to any Texas case which supports the jury answer of $36,500.00 to special issue No. 1 in this case. There are several cases holding the fees there involved to be excessive. See, among others, the following: Southland Life Insurance Co. v. Norton, 5 S.W.2d 767 (Tex.Com.App., 1928, holdings approved); Brand v. Denson, 81 S.W.2d 111 (Tex.Civ.App., Austin, 1935, wr.dism.); Guthrie v. Flock, 360 S.W.2d 804 (Tex. Civ.App., Amarillo, 1962, n.w.h.). Few, if any, of the cases add anything to the formula provided in The State Bar Rules, Section 11, Article XIII, hereinabove set out.

The application of Canon No. 11 to the facts in this case will now be considered. Concerning factor No. (1), appellee's evidence shows that approximately 15 hours of work was done by Mr. Neel between January 8th, 29th, 1965. No novel or difficult questions were involved. The work done did not require any special skill. It was routine work which could have been accomplished by an attorney without any great amount of experience with the use of a form book and the Probate Code. Factor (2) of Canon 11 is not shown to be involved here. Factor (3) of Canon 11 involves "the customary charges of the bar for similar services." The highest amount mentioned in the evidence for the work done prior to Mr. Neel's death on an hourly basis was about $750.00. The highest amount testified to, based upon the question propounded to Mr. Stone, hereinbefore set out, was $38,000.00. The jury finding of "the reasonable value of the legal services rendered on behalf of the J. H. Harv-

ey Estate for the period from January 8, 1965 to January 29, 1965" was $36,500.00. That finding was necessarily based upon the opinion that the work done prior to the death of Mr. Neel on January 29, 1965 would entitle Neel & Seaman to charge a fee in that amount to the Executor Bank (who was not a party to the suit and not bound by the judgment); which sum of $36,500.00 amounted to a little less than one-half of the total attorney's fee to be charged for the entire administration of the Harvey Estate. This case went to trial on April 16, 1969, more than four years after the death of Mr. Neel, during which period of time Mr. Seaman and his partners worked approximately 500 hours for the Harvey Estate, including work done in the settlement of a serious will contest. I am unwilling to hold that under all the evidence in this case that "the customary charges of the bar for similar services" would authorize a fee of $36,500.00 for the work done between January 8th and 29th, 1965. I would hold that such amount is not reasonable under the circumstances of this case. Factor number (4) of Canon 11 is material on the question of reasonableness of the fee which can be charged in this case. A large amount is involved and this factor would tend to authorize a higher fee than would be charged on an hourly basis. The benefits to the client from the services rendered are not unusual and, indeed, the work done prior to Mr. Neel's death was required and routine regardless of the amount involved. Factor number (5) of Canon 11 when applied to this case leads to the conclusions that the compensation was not contingent but was reasonably certain and the services were not casual but were rendered for an established and constant client. These considerations would tend to lower the fee charged rather than causing it to be increased.

The Court of Civil Appeals may review the award and amount of an attorney's fee just as it is authorized to review other determinations of fact made by the trial court, and may require a remittitur if it determines that the award of the trial

court is excessive. See International Security Life Insurance Company v. Spray, 468 S.W.2d 347 (Tex.Sup.1971); Southland Life Ins. Co. v. Norton, 5 S.W.2d 767 (Tex.Com.App., 1928, holdings approved); Missouri Pacific Railroad Company v. Kimbrell, 160 Tex. 542, 334 S.W.2d 283 (1960).

In Atchison, Topeka & Santa Fe Railway Company v. Ham, 454 S.W.2d 451 (Tex.Civ.App., Austin, 1970, wr.ref.n.r.e.) the court held in part:

"Under Rule 440, Texas Rules of Civil Procedure, a court of civil appeals, if the 'court is of the opinion that the verdict and judgment of the trial court is excessive,' may suggest remittitur of the excess, and if remittitur is not filed, the appellate court may reverse the trial court's judgment. The court of civil appeals is required to exercise 'its sound judicial judgment and discretion in the ascertainment of what amount would be reasonable compensation.' Kansas City Southern Railway Company v. Powell, 411 S.W.2d 633 (Tex.Civ.App., Beaumont, 1967, no writ), and cases cited.

. . . . . . .

. . . For the court of civil appeals to exercise such judgment there need not be extraneous proof of passion, prejudice, sympathy, or any other proof showing that the jury was improperly motivated. Flanigan v. Carswell, 159 Tex. 598, 324 S.W.2d 835 (1959); Dallas Railway and Terminal Co. v. Farnsworth, 148 Tex. 584, 227 S.W.2d 1017 (1950). In determining whether the verdict of the jury was excessive, the court of civil appeals must first arrive at a conclusion, after review of the evidence, as to what sum would be held to be reasonable if it had been assessed by the jury. Texas and New Orleans Railroad Co. v. Syfan, 91 Tex. 562, 44 S.W. 1064 (1898); Flanigan v. Carswell, supra."

In *Flanigan* our Supreme Court held in part that:

". . . The trial court, in deciding whether a verdict is excessive and a remittitur required to cure the error, should be governed by the same standard as the courts of civil appeals. See World Oil Co. v. Hicks, 1937, 129 Tex. 297, 103 S.W.2d 962, opinion adopted by the Supreme Court; Galveston, H. & S. A. Ry. Co. v. Johnson, 1900, 24 Tex.Civ. App. 180, 58 S.W. 622, writ refused. This standard was set forth by this Court in Wilson v. Freeman, 108 Tex. 121, 185 S.W. 993, 994, as follows:

'All the Court of Civil Appeals can do, and all that is required of it to do * * * is to exercise its sound judicial judgment and discretion in the ascertainment of what amount would be reasonable compensation for the injury sustained, and treat the balance as excess * * * (Having) decided upon an amount that would be reasonable compensation * * * it should authorize a remittitur of the excess * * in accordance with its sound judgment.' "

I agree with appellant's contention under his first point that the verdict is excessive. In the trial court error was duly assigned in the motion for new trial by grounds numbers 62, 63, 64, 65 and 66, setting up that there was no evidence to support the jury's answer to Issue No. 1; that the answer to Issue No. 1 was against the great weight and overwhelming preponderance of the evidence; that the total fee found by the answer to that issue should not have exceeded $10,000.00; that the trial court should have taken judicial knowledge that $36,500 was an excessive amount, and that a remittitur should be required of plaintiff or else a new trial granted. Where there is a holding that the verdict and judgment are excessive, Rule 440, T.R.C.P., requires that before reversing the case the Court of Civil Appeals shall indicate to appellee the time in which a remittitur of the excess may be filed. Appellant argues that it has been demonstrated that a remittitur of $15,900, at least, should be ordered so as to

reduce the judgment to 60% of a fee of $10,000. Appellant has never contended that appellee is not entitled to recover part of what would be a reasonable fee for the services rendered prior to the death of Mr. Neel, and appellant does not complain of the percentages contained in the answer of the jury to Special Issue No. 2 because he agrees that in accordance with the contract the appellee's portion of the fee for the work done before the death of Mr. Neel should be 60%.

The final determination concerning remittitur which I would make will be stated after discussion of appellant's remaining points.

Appellant's third point, which asserts that the trial court erred in permitting the filing of appellee's trial amendment after both parties had rested and the evidence had been completed, will now be discussed. Appellee's trial amendment, omitting formal parts, has been herein before set out. The Statement of Facts reflects that following appellee's tender of her trial amendment counsel for appellant made extended objections to its filing which were overruled by the trial court.

Among other things, counsel for appellant objected to the filing of the trial amendment as coming too late, and on the ground that the letter agreement between Neel and Seaman fixed the relationship of the parties and that it was far too late for plaintiff to change her cause of action. In reply to the objections, counsel for appellee stated that Mr. Neel rendered services for the Harvey Estate "and apart and above from any consideration of the agreement, he is entitled to recover for those services from Mr. Seaman who has collected and will collect the money for the services that he performed and thus it's simply stating the case in terms of the work actually done or in terms of the law, a theory of quantum meruit. . . ."

In addition to the objections reflected by the Statement of Facts, appellant filed separate exceptions to appellee's trial amend-

ment which were overruled by the court. Appellant's written objections and exceptions were as follows:

"Defendant specially excepts to Trial Amendment filed herein by plaintiff, after the testimony is closed, for these reasons:

1. It comes too late. Any evidence in the record which might remotely be said to support the allegations of said trial amendment were placed in evidence without notice to defendant that such alternative claim would be made.

2. It is not supported by any evidence in this cause for the reason that all the competent testimony before the jury establishes as a matter of law that any legal services rendered the Harvey Estate prior to the death of C. B. Neel was done as Neel and Seaman, and there is no evidence that any work was done by C. B. Neel solely as an individual practitioner separate and apart from the letter agreement of September 11, 1963.

3. If we assume plaintiff is correct in its position that all the fee belonged to C. B. Neel, then its claim is against the Corpus Christi Bank and Trust and not against the defendant. The Bank is not a party to this suit.

WHEREFORE, defendant moves that such Trial Amendment be stricken."

This case went to trial on April 16, 1969 on plaintiff's fourth amended petition which was filed on that same date. By that petition plaintiff pleaded a portion of the contract between Mr. Neel and Mr. Seaman and alleged that Mr. Seaman was in violation of the contract; that Mr. Seaman had violated the Uniform Partnership Act, Secs. 20 and 21; that the attorney's fee for representing the Harvey Estate would exceed $90,000 and plaintiff claimed $60,000 damages for breach of contract and violation of the Partnership Act; and pleaded in the alternative that Mr. Neel's fair share of the attorney's fees from the Harvey Estate based on an equitable divi-

sion thereof would be not less than $60,000. The case was tried before a jury on that pleading, and it was not until April 22, 1969, after the evidence had been concluded that plaintiff-appellee filed her trial amendment over the objection of defendant-appellant, as hereinabove set out.

The filing of the trial amendment should not have been permitted by the trial court and abuse of discretion is reflected in allowing that amendment at the time in question. It came after the evidence had been closed and it was too late to review and correct many rulings of the trial court made in the light of the pleadings existing during the course of the trial. The trial amendment set forth a completely new cause of action "apart and aside" from the contract between Neel and Seaman, and prayed for damages in addition to those prayed for in the pleadings upon which the case had been tried. It came at a time when there was no opportunity for a reasonable amount of contemplation, study and research as to questions it raised. The case as tried before the jury was entirely on plaintiff's fourth amended original petition seeking to recover part of the entire fee·or damages based upon the anticipated amount of the entire fee. Many rulings of the court as to admission of evidence were made because of the pleadings upon which the case went to trial and was tried. Assignment of Error No. 22 was to the overruling by the trial court of defendant's exception to the prayer, stating that plaintiff should have been required to specifically allege all causes of action sued on, and it is obvious that a prayer for general relief did not give notice of the quantum meruit plea in the trial amendment. Assignments 39, 40, 41, 42, 43 and 44 of appellant's motion for new trial were claims of error in admitting evidence as to what would be a reasonable fee for the work done before the death of Mr. Neel, including that there were no pleadings as a basis for such evidence, the Executor bank was not a party and was not bound, that the claim for services during that period was one against the Bank and not defendant, and that Mr.

Seaman might not be able to collect from the Bank a fee for that period in the amount plaintiff sought to prove. Assignments 54 and 55 presented the error in admitting evidence as to who produced the business of the Harvey Estate and as to the past personal relationship between Mr. Neel and Dr. Harvey. Even though the evidence did not sustain the allegations, the jury had read to it pleadings of the plaintiff alleging breach of contract and violation of the Uniform Partnership Act, coupled with pleas for recovery of damages, and no pleading whatsoever was read to the jury showing a claim based on only what was probably about 15 hours of work. Based on the pleadings the jury heard and the only pleadings prior to the closing of the testimony, a picture was painted to the jury which the verdict shows caused prejudice in the minds of the jury against Mr. Seaman.

The contentions made by appellant under his third point are supported by several decisions. In Westinghouse Electric Corp. v. Pierce, 153 Tex. 527, 271 S.W.2d 422 (1954), our Supreme Court held in part as follows:

"The trial court did not abuse its discretion in refusing to allow plaintiff to file the trial amendment.

Rule 66, Texas Rules of Civil Procedure, provides: 'If evidence is objected to at the trial on the ground that it is not within the issues made by the pleading * * * the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him in maintaining his action or defense upon the merits.' The provision is a salutary one, directed at arriving at the true legal rights of the parties under the true facts, but we cannot hold that the trial court abuses its discretion in denying the right to file a trial amendment when the record disclos-

es a probable resulting prejudice to the opposite party 'in maintaining his action or defense.'

It seems quite clear to us that the trial court was justified in concluding on the record before it that the proffered amendment and testimony supporting it would have prejudiced the defendants in maintaining their defense. Plaintiff's suit was filed on March 27, 1951. Trial of the suit began on November 18, 1952. In the meantime plaintiff gave his testimony by deposition on two occasions. In his last two pleadings and in his testimony in both depositions he definitely fixed the manner in which he was injured by the rays from the lamp. *The defendants had a right to assume that the case as made by the pleadings and testimony was the case and the only case they were called upon to defend and to prepare their defense accordingly.* Safety Casualty Co. v. Wright, 138 Tex. 492, 160 S.W.2d 238, 254; Erisman v. Thompson, 140 Tex. 361, 167 S.W.2d 731, 733; Texas Employers' Ins. Ass'n v. Dillingham, Tex.Civ.App., 262 S.W.2d 748, writ refused, N.R.E. This they did; and the record reflects that they were prepared with witnesses and experiments to convince the jury that plaintiff could not have sustained an injury in the manner in which he claimed to have sustained it as a basis for his suit. In his testimony on the trial, in making out his case, plaintiff confirmed his previous pleadings and testimony of the manner in which he was injured. It was not until after he was confronted with the full force of defendants' evidence that he sought to change the factual basis of his case. He and his attorneys were in possession of the lamp at all times after the alleged injury and it was therefore within their power at all such times to reenact the circumstances under which the injury was supposed to have occurred, thus enabling them to obtain different evidence as to the distance involved and to change the factual basis of the suit

affording the defendants notice of the change in time to allow defendants full and fair opportunity to prepare for trial on a different factual basis." (Emphasis supplied).

Appellant's position in connection with the filing of appellee's trial amendment particularly as it relates to quantum meruit or implied contract is also supported by the cases of Phoenix Lumber Co. v. Houston Water Co., 94 Tex. 456, 61 S.W. 707 (1901); Booth v. Houston Packing Co., 105 S.W. 46 (Tex.Civ.App., 1907, n.w.h.); and G. R. Scott, Boone & Pope v. Willis, 194 S.W. 220 (Tex.Civ.App., San Antonio, 1917, n.w.h.). Appellant's third point should be sustained.

Appellant's second point, which asserts that a money judgment should not have been rendered against Mr. Seaman because it is based on a jury finding of the value of legal services rendered for the Executor Bank, and the fee for such services had not been agreed upon or paid by the Executor and it is not bound by the verdict and judgment in this case, will now be discussed.

In reviewing our original decision the Supreme Court has passed only upon one question, i. e. that Corpus Christi Bank & Trust the Executor Bank, was not an indispensable party to this suit. Other questions presented on the original appeal were not decided. In the present posture of this case the parties are in agreement that the fee for the work done between January 8, 1965 and January 29, 1965 should be divided 60% to appellee (as Executrix of Mr. Neel's Estate) and 40% to appellant. However, there is no jury finding nor conclusive evidence establishing that the Executor Bank has agreed to pay any particular amount as a fee for the services rendered between January 8, 1965 and January 29, 1965. The evidence is to the contrary, that is, no such fee has been agreed upon by the Executor-Bank and the payments by it on the two interim billings were made to

the firm of Keys, Russell, Watson & Seaman, it being shown that several members of that firm other than Mr. Seaman did a substantial amount of the work on the Harvey Estate between the date of death of Mr. Neel and the time of trial. In this situation a money judgment should not have been rendered against appellant. If the pleadings had been framed in terms of an action for declaratory judgment, appellee would, on the present record in the light of the position taken by appellant, have been entitled to a declaration that she recover 60% of the fee agreed to or paid by the Executor-Bank for the period January 8, 1965 to January 29, 1965, or a fee for such period established by judgment of a court which is binding on the Executor-Bank. But we do not have pleadings here which would support such a judgment. Appellant's second point should also be sustained.

Appellant's fourth point should be overruled in view of the discussion in our original opinion. See 461 S.W.2d 659, 665, 667. However, if the judgment herein is ultimately reversed and the cause remanded for new trial, such ruling should be without prejudice to the renewed assertion of appellant's plea in abatement.

Since I would hold that reversible error is presented by appellant's first three points, the question of disposition of the case in view of the position taken by appellant as to remittitur will now be considered.

Although appellant contends it was not proper to render a money judgment against Mr. Seaman for any amount he takes the position that if his first point should be sustained in such a way as to reduce the judgment to a reasonable amount, this case can be concluded without further complaint by him. Appellant further says

in substance that if the judgment of the trial court should stand, the harm and unfairness to him and his partners is quite evident; they cannot be expected to obtain from the Executor Bank a fee large enough to fairly compensate them for their many hours of service if approximately one-half of the fee for the entire administration is allocated to payment for approximately 15 hours of work done between January 8, 1965 and January 29, 1965; that the Executor Bank is not bound by this judgment and would violate its trust and fiduciary relationship with the devisees and legatees of the Harvey Estate if without litigation it paid a much larger fee than would otherwise be reasonable, in order to compensate for the verdict of the jury and the judgment herein of the trial court.

After consideration of the evidence and the authorities and in view of the agreement of appellant that he would be willing to assent to a judgment which would amount to 60% of a fee of $10,000.00, representing the fee to be charged for work done prior to the death of Mr. Neel, I have reached the conclusion that a remittitur of $15,900.00 should be suggested; and that if such remittitur is filed by appellee within 15 days from date of this opinion and judgment, the judgment herein should be reformed so as to provide that appellee shall recover from appellant the sum of $6,000.00, together with interest at the rate of 6% per annum from May 19, 1969, the date of the original judgment in the lower court, and as so reformed the judgment should be affirmed; and that if remittitur is not so filed, the judgment should be reversed and the cause remanded for new trial.

For the reasons stated, I respectfully dissent from the unqualified affirmance of the judgment below.